A.H. BELO CORPORATION, KHOU–TV, and Dan Lauck, Appellants,

v.

Gilbert Josef CORCORAN, Individually and as Managing Conservator of Brittany Ann Corcoran, a Minor, and Brittany Ann Corcoran, a Minor, by and through Gilbert Josef Corcoran, as Next Friend and Managing Conservator, Appellees.

No. 01–00–00779–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 12, 2001.

S. Shawn Stephens, Houston, for Appellant.

Lynn S. Kuriger, Larry J. Doherty, Houston, for Appellee.

Panel consists of Justices WILSON, NUCHIA, and DUGGAN.*

## OPINION

NUCHIA, Justice.

This is an interlocutory appeal[1] of the trial court's denial of a motion for summary judgment by appellants, A.H. Belo Corporation, KHOU–TV, and Dan Lauck. We reverse and render.

## BACKGROUND

Nikki–Marie Jones filed a paternity suit against Gilbert Josef Corcoran to establish that he was the father of Jones's daughter Brittany, and Corcoran countersued for custody of Brittany. The trial court awarded custody to Corcoran. In August 1997, Jones did not return Brittany to Corcoran after a visitation. Jones spent 54 days in jail on contempt charges. Brittany remained in the care of a third per-

son, and her whereabouts were unknown to Corcoran.

After Jones was released from jail, a KHOU–TV reporter, Dan Lauck, learned about her story from Jones's attorney. The attorney's wife, who was also his secretary, gave Lauck Jones's telephone number, and he called Jones to set up an interview. Jones agreed to be interviewed, with Brittany present, on the condition that Lauck would not reveal the location of the interview or the whereabouts of Brittany if he learned of them. On the date of the interview, Lauck and a photographer drove to a hotel on the north side of Houston and picked up Jones. Jones directed Lauck to a real estate office, where a man came out of the building and got in a car. Jones instructed Lauck to follow the car. They drove further north to a house that, according to Lauck, may have been in the Conroe area, and Lauck conducted the interview. Lauck did not know the address or the exact location of the house. Following the interview, Lauck produced, and KHOU–TV aired, a story that included the interview with Jones and showed Brittany with Jones.

Corcoran, individually and on behalf of Brittany as her managing conservator and next friend, sued appellants along with Jones and two other individuals who allegedly assisted Jones in caring for and hiding Brittany.[2] He alleged causes of action against all defendants for violation of chapter 42 of the Texas Family Code, violation of section 7.02 of the Penal Code, negligence, gross negligence, negligence *per se*, intentional infliction of emotional distress, and civil conspiracy. With respect to ap-

---

\* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

1. We have jurisdiction of this interlocutory appeal under section 51.014(a)(6) of the Texas Civil Practice & Remedies Code. TEX.CIV.PRAC.

& REM.CODE ANN. § 51.014(a)(6) (Vernon Supp. 2001).

2. Corcoran recovered Brittany on March 24, 1998 when he saw her while walking through a hospital parking lot.

pellants, Corcoran specifically alleged that they knew the whereabouts of Brittany during the time of her abduction and did not reveal to Corcoran, the court, or other authorities where Brittany was and that they entered into a conspiracy with Jones to deprive Corcoran of his possessory rights to Brittany and to deprive Brittany of her father's love, companionship, society, comfort, and support.

Appellants filed a motion for summary judgment asserting that (1) there was no evidence of a family code violation, (2) Corcoran had no claim under the penal code, (3) appellants could not be liable for negligence because they owed no duty to Corcoran or Brittany, (4) the absence of duty negated the claim under negligence per se, (5) there was no evidence of extreme and outrageous behavior to support intentional infliction of emotional distress, (6) there was no evidence of a specific intent to accomplish an unlawful purpose or a lawful purpose by unlawful means, as required for civil conspiracy, and (7) imposing liability on appellants for engaging in routine newsgathering is a violation of the First Amendment. The trial court denied the motion for summary judgment, and appellants filed this appeal.

## STANDARD OF REVIEW

■ We review the denial of a motion for summary judgment by the same standard as the granting of a summary judgment. *See Texas Monthly, Inc. v. Transamerican Natural Gas Corp.*, 7 S.W.3d 801, 805 (Tex.App.—Houston [1st Dist.] 1999, no pet.). Under rule 166a(c), summary judgment is proper only when the movant establishes that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex.1995); *Lawson v. B Four*

*Corp.*, 888 S.W.2d 31, 34 (Tex.App.—Houston [1st Dist.] 1994, writ denied). As movant, the defendant is entitled to summary judgment if the evidence disproves as a matter of law at least one element of each of the plaintiff's causes of action. *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991); *Marchal v. Webb*, 859 S.W.2d 408, 412 (Tex.App.—Houston [1st Dist.] 1993, writ denied).

■ Under rule 166a(i), a party is entitled to summary judgment if, after adequate time for discovery, there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial. TEX.R.CIV.P. 166a(i). Thus, a no-evidence summary judgment is similar to a directed verdict. *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex.App.—Houston [1st Dist.] 1999, no pet.). The motion for summary judgment may not be general, but must state the elements on which there is no evidence. TEX.R.CIV.P. 166a(i). The trial court must grant the motion unless the nonmovant produces more than a scintilla of evidence raising a genuine issue of material fact on each of the challenged elements. *See Id.; Macias v. Fiesta Mart, Inc.*, 988 S.W.2d 316, 317 (Tex. App.—Houston [1st Dist.] 1999, no pet.). The party with the burden of proof at trial has the same burden of proof in the summary judgment proceeding. *Galveston Newspapers, Inc. v. Norris*, 981 S.W.2d 797, 799 (Tex.App.—Houston [1st Dist.] 1998, pet. denied).

■ In reviewing a summary judgment, we must indulge every reasonable inference in favor of the nonmovant and resolve any doubts in its favor. *Flameout Design*, 994 S.W.2d at 834. We will take all evidence favorable to the nonmovant as true. *Johnson*, 891 S.W.2d at 644; *Lawson*, 888 S.W.2d at 33.

## DISCUSSION

### *Violations of the Penal Code*

█ In their second issue, appellants contend that, as a matter of law, they cannot be civilly liable to appellees for alleged violations of the Penal Code because appellees have no standing to prosecute violations of criminal statutes, and the Penal Code does not provide for a private cause of action. We agree.

Appellees pleaded, as a cause of action, violations of section 7.02(2) and (3)[sic] of the Texas Penal Code [3] and requested punitive damages. However, they apparently abandoned this claim in their response to appellants' motion for summary judgment by stating, "Respondents are not saying that the Penal Code created a cause of action." In their appellate brief, they make it clear that the alleged violation of the Penal Code is the basis of their negligence *per se* claim rather than a separate cause of action.

, █ "[T]he Penal Code does not create private causes of action, and a victim 'does not have standing to participate as a party in a criminal proceeding.'" *Aguilar v. Chastain*, 923 S.W.2d 740, 745 (Tex.App.— Tyler 1996, writ denied). Accordingly, we sustain appellants' second issue.

### *Violation of the Family Code*

In their third issue, appellants contend they were entitled to summary judgment because they owed no duty to appellees under the Family Code. Appellants argue that they could not have violated the Fami-

ly Code because the Code contains no reporting requirement for child abduction and their conduct was not the affirmative conduct required for "aiding" in child abduction.

Section 42.002 of the Family Code provides:

(a) A person who takes or retains possession of a child or who conceals the whereabouts of a child in violation of a possessory right of another person may be liable for damages to that person.

(b) A possessory right is violated by the taking, retention, or concealment of a child at a time when another person is entitled to possession of or access to the child.

Tex.Fam.Code Ann. § 42.002 (Vernon 1996).

Section 42.003 provides:

(a) A person who aids or assists in conduct for which a cause of action is authorized by this chapter is jointly and severally liable for damages.

(b) A person who was not a party to the suit in which an order was rendered providing for a possessory right is not liable unless the person at the time of the violation:

(1) had actual notice of the existence and contents of the order; or

(2) had reasonable cause to believe that the child was the subject of an order and that the person's actions were likely to violate the order.

---

**3.** Appellees evidently intended to reference section 7.02(a)(2) and (3). Section 7.02(a) provides:

(a) A person is criminally responsible for an offense committed by the conduct of another if:

. . .

(2) acting with intent to promote or assist the commission of the offense, he solicits, en-

courages, directs, aids, or attempts to aid the other person to commit the offense; or

(3) having a legal duty to prevent commission of the offense and acting with intent to promote or assist its commission, he fails to make a reasonable effort to prevent commission of the offense.

Tex.Penal Code Ann. § 7.02 (Vernon 1994).

Tex.Fam.Code Ann. § 42.003 (Vernon 1996).

In their third amended original petition, appellees alleged that appellants knew the whereabouts of Brittany during the time of the abduction and that this knowledge made them a party to a felony in progress.[4] In their brief, appellees state that Lauck met Jones on the day of the interview at a Houston hotel and followed an unknown man from the hotel to a neutral site, where Lauck and a photographer were with Brittany for about two hours. Appellees do not contend Lauck knew of Brittany's whereabouts either before or after this two-hour meeting. Thus, appellees are contending that Lauck's agreement to meet with Jones and Brittany at an unknown location and the two-hour meeting constitute aiding or assisting Jones's retention and/or concealment of Brittany.

There are three reported cases discussing liability under chapter 42, and its predecessor, chapter 36, of the Family Code. Each of these cases involves family members of the abductor who were in contact with the abductor before and after the abduction.

In *Smith v. Smith*, 720 S.W.2d 586 (Tex. App.—Houston [1st Dist.] 1986, no writ), the mother of the abducted child sued the parents and sister of her ex-husband, who took their two children in violation of a custody order and fled to England. The evidence showed that the father was present when his son took the children; all the defendants had made statements that they were willing to spend large sums of money to keep custody from the mother; the defendants visited the abductor and the

children in England and gave him financial support; and the abductor did not have the financial ability to support himself and the children without his family's assistance. *Id.* at 596. The court of appeals found this evidence sufficient to support the jury's finding that the three family members aided or assisted the abductor in taking or retaining possession of the children or in concealing the whereabouts of the children. *Id.* at 597.

In *Weirich v. Weirich*, 833 S.W.2d 942 (Tex.1992), Bonnie, the children's mother, filed for divorce and obtained a temporary restraining order preventing her husband from interfering with her possession of their two children. *Id.* at 943. The husband abducted the children and took them to his mother's farm, where they stayed for four days. *Id.* A private investigator recovered the children and returned them to Bonnie. *Id.* Approximately two weeks later, the husband borrowed $4,000 from a bank on a note, which his mother co-signed as guarantor. *Id.* His mother then loaned him her truck, and he went to his wife's home and removed furniture, files, and items relating to the children and stored them in his mother's barn. *Id.* at 943–44. Two days later, he abducted the children from school and took them again to his mother's farm. *Id.* at 944. His mother drove him and the children to the airport. *Id.* When Bonnie called to ask about the children's whereabouts, the husband's mother told her they had gone camping, but she did not know where. *Id.* A week later, the husband was indicted for child abduction. *Id.* His mother was present at a contempt hearing and testified under oath that, if she ever discovered the

---

4. Appellees' petition alleges liability of appellants only under section 42.003 of the Family Code, aiding or assisting in interference with a possessory right. The petition recites that notice need not be given to appellants under section 42.004(e), which applies only to parties aiding or assisting in the interference. *See* Tex.Fam.Code Ann. § 42.004(e) (Vernon 1996).

whereabouts of her son and the children, she would notify the court and Bonnie's lawyers. *Id.* at 945.

The husband called his mother a few days after the abduction to let her know they were in Mazatlan, Mexico. *Id.* at 946. In subsequent years, the husband and the children visited the husband's mother at her farm one Christmas, again one Thanksgiving, and on at least two other occasions. *Id.* Telephone records revealed a series of calls between the farm and Malibu, California, where the husband lived with the children. *Id.* The husband's mother never revealed the whereabouts of her son or the children to the court or to Bonnie's lawyers.

The supreme court, in finding sufficient evidence that the husband's mother aided and assisted her son's violation of the Family Code by concealing the whereabouts of the children, stated, "By swearing in open court, Opal *assumed an affirmative duty* to notify Bonnie's attorneys or the court if she discovered the whereabouts of the children." *Id.* at 945 (emphasis added).

In *Lozano v. Lozano*, 983 S.W.2d 787 (Tex.App.—Houston [14th Dist.] 1998), *rev'd*, 44 Tex.Sup.Ct. J. 499, No. 99–0121, 2000 WL 1826568 (March 8, 2001) (op. on rehearing) (designated for publication), Deana Lozano sued her ex-husband's parents, Juan and Blanca Lozano, his brother, Alex, and his two sisters, Monica and Sandra, for interference with her possessory rights by aiding or assisting her ex-husband, Junior, in abducting their daughter, Bianca. The court of appeals noted that, in *Weirich* and *Smith*, the only two published cases addressing a non-abductor's liability for interfering with custody rights,

"the defendants both knew of the children's whereabouts and took affirmative measures to ensure the continuation of the abduction." *Lozano*, 983 S.W.2d at 790. The court held that there was legally insufficient evidence of either circumstance in *Lozano*. *Id.* The Texas Supreme Court reversed the court of appeals in a per curiam opinion, holding that there was some evidence that Blanca, Monica, and Alex aided or assisted Junior, but that there was no evidence that Sandra or Juan aided or assisted Junior. *Lozano*, 44 Tex. Sup.Ct. J. at 500, at ——. The evidence supporting this holding is detailed in three concurring and dissenting opinions, which reveal that four justices agreed that the evidence was legally sufficient to show Blanca, Monica, and Alex aided or assisted Junior; two of those justices would also have held the evidence was sufficient to show that Sandra also aided or assisted Junior; three justices thought the evidence was sufficient only as to Blanca; and all justices agreed that the evidence was legally insufficient as to Juan.[5] The majority appears to have found legally sufficient evidence of aiding or assisting Junior from the following facts: (1) Junior did not own a car or have a steady job and was behind in his child-support payments; (2) Junior had never been able to support himself without assistance from his parents; (3) within five months of Junior's disappearance, Alex borrowed $3,000 on his credit card—more than half his earned income for the year; (4) in response to discovery, Monica and Alex asserted a Fifth Amendment privilege (as did Sandra and other family members); (5) Monica and Alex (and Sandra) refused to give names and addresses of relatives and

---

**5.** Only seven justices participated in the opinions because Justice O'Neill was a justice on the 14th Court of Appeals and was a member of the panel that decided *Lozano*, and Justice

Gonzales, who participated in the original decision, resigned his office on December 25, 2000 and did not participate in the motion for rehearing.

friends in Mexico; and (6) Monica and Alex took down several of the thousands of posters showing pictures of Junior and Bianca. *Id.* at 518, at —— (Baker, J., concurring and dissenting).

The present case is distinguishable from *Smith, Weirich,* and *Lozano* by the fact that, in *Smith, Weirich,* and *Lozano,* the defendants took some affirmative steps to assist the abductor either in the abduction itself or to assist the abductor in retaining possession or concealing the whereabouts of the child. Appellees' petition does not allege any affirmative steps that appellants took to aid or assist Jones in abducting Brittany, retaining possession of Brittany, or concealing the whereabouts of Brittany. Appellees allege only that appellants knew the whereabouts of Brittany "during the period of abduction" and were, therefore, "party to a felony in progress" and that Lauck "set up a clandestine rendevous" with Jones.

Appellees argue that the duty under the Family Code *not to conceal* the whereabouts of an abducted child is a duty to *reveal* the whereabouts of the child. They find support for this contention in *Weirich,* in which the court said, "By swearing in open court [that she would notify the court and the plaintiff's lawyers if she learned of the whereabouts of her son and the children], Opal assumed an affirmative duty to notify Bonnie's attorneys or the court if she discovered the whereabouts of the children." *Weirich,* 833 S.W.2d at 945. However, this is the only reference to an affirmative duty to reveal the whereabouts of abducted children made in any of the published cases, and that duty was assumed by Opal's sworn statement in court. There is nothing in section 42.003 or the case law to indicate such an affirmative duty by all who have any knowledge of an abducted child's whereabouts.

Appellees assert that Lauck took affirmative measures when he sought a meeting and met with Jones and Brittany. However, the meeting and interview did not in any way assist Jones in the abduction, retention, or concealment of Brittany. Jones's concealment of Brittany was the same with or without Lauck's meeting and interview. Therefore, seeking and obtaining the interview was not a violation of the Family Code under section 42.003.

We sustain issue number three.

### Negligence and Gross Negligence

In their fourth issue, appellants contend there is no cause of action for negligence or gross negligence because they owed no legal duty to appellees. Duty is a question of law for the court to determine. *See Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex. 1990).

Regarding the existence of a duty, the supreme court has stated,

[I]f a party negligently creates a situation, then it becomes his duty to do something about it to prevent injury to others if it reasonably appears or should appear to him that others in the exercise of their lawful rights may be injured thereby.

*El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987) (quoting *Buchanan v. Rose,* 138 Tex. 390, 159 S.W.2d 109, 110 (1942)). There is no duty to control the actions of third persons unless there is a special relationship between the alleged tortfeasor and the third person, such as employer-employee, independent contractor-contractee, or parent-child. *Rodriguez v. Spencer,* 902 S.W.2d 37, 42 (Tex.App.—Houston [1st Dist.] 1995, no writ).

In the present case, appellants did not create the situation at issue-Brittany's abduction. In addition, there was no special relationship that created a duty. Under

these facts, we hold that appellants had no duty to appellees.

We sustain appellants' fourth issue.

### Negligence Per Se

In their fifth issue, appellants contend that the imposition of a duty upon them through the doctrine of negligence *per se* is improper as a matter of law.

In their petition, appellees alleged violations of sections 7.01 and 7.02 of the Texas Penal Code and chapter 42 of the Family Code as a basis for negligence-*per-se* liability. Appellees' petition states that sections 7.01 and 7.02(a)(3), along with chapter 42 of the Family Code, "constitute a legislatively imposed standard of conduct that prohibit[s] child abduction and/or interference with the possessory rights of a person." Thus, their claim that appellants violated the Penal Code is based on the assumption that appellants violated the Family Code.

We need not determine whether the violation of chapter 42 of the Family Code or sections 7.01 and 7.02(a)(3) constitute negligence per se.[6] We have determined that the actions of appellants did not violate chapter 42 of the Family Code as a matter of law and did not assist Jones in her violation of the Family Code. Therefore, appellees' negligence-*per-se* claim has no merit.

Accordingly, we sustain appellants' fifth issue.

### Intentional Infliction of Emotional Distress

In their sixth issue, appellants contend that they were entitled to a summary judgment on appellees' claim of intentional infliction of emotional distress because, as a matter of law, their conduct was not outrageous.

The elements of intentional infliction of emotional distress are (1) a defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the conduct caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex. 1993). Whether conduct is extreme and outrageous is a question for the court to determine. *See Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex.1993). The fact that conduct is intentional, malicious, or even criminal does not mean that it is extreme or outrageous for purposes of imposing liability for intentional infliction of emotional distress. *Brewerton v. Dalrymple*, 997 S.W.2d 212, 215 (Tex.1999). In determining whether conduct is extreme and outrageous, courts consider the context and the relationship between the parties. *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex.1999).

In their petition, appellees alleged that Lauck "acted in an extreme and outrageous manner when he assisted Jones in perpetrating the kidnapping." In their brief, appellees direct us to the Restatement of Torts, which explains "outrageous" as follows:

> Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"

RESTATEMENT (SECOND) OF TORTS § 46, comment d.

---

6. An analysis to determine whether the violation of a statute is a basis for a claim of negligence *per se* is found in *Perry v. S.N.*, 973 S.W.2d 301, 305–07 (Tex.1998).

The conduct of which appellees complain is Lauck's arranging and conducting an interview with Jones and Brittany and his failure to notify Corcoran or any authorities of the interview or its location. We hold that, as a matter of law, such conduct is not extreme or outrageous.

We sustain appellants' sixth issue.

### Civil Conspiracy

In their seventh issue, appellants contend they were entitled to a summary judgment on appellees' conspiracy claim because appellees did not prove the elements of a conspiracy cause of action. In their motion for summary judgment, appellants asserted that appellees could not show that appellants had the specific intent to accomplish an unlawful purpose or a lawful purpose by unlawful means.

The elements of civil conspiracy are (1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result. *Operation Rescue–Nat'l v. Planned Parenthood of Houston and Southeast Tex., Inc.*, 975 S.W.2d 546, 553 (Tex.1998). In addition, civil conspiracy requires specific intent to agree to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex.1996).

In their response to the motion for summary judgment, appellees did not present any evidence of the requisite specific intent on the part of appellants to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. On appeal, they argue that "issues concerning intent and knowledge are not proper subjects for summary judgment," citing *McKnight v. Riddle & Brown, P.C.*, 877 S.W.2d 59, 61 (Tex.App.—Tyler 1994, writ denied).

*McKnight* was decided before rule 166a was amended to add subsection i, which provides for a "no evidence" motion for summary judgment, placing the burden on the non-movant to produce evidence of all challenged elements of a cause of action. *See* TEX.R.CIV.P. 166a(i). Therefore, in *McKnight*, the burden remained on the movant, who attempted to establish, as a matter of law, the lack of intent through self-serving affidavits. *McKnight*, 877 S.W.2d at 61.

In the present case, appellants' challenge that there was no evidence of intent placed the burden on appellees to produce some evidence of intent. Appellees did not do so.

We sustain appellants' seventh issue.

### First Amendment

We need not reach appellants' first issue relating to the First Amendment because appellants have established that they are entitled to summary judgment on all appellees' common law and statutory causes of action.

## CONCLUSION

We reverse the trial court's denial of appellants' motion for summary judgment and render judgment that appellants' motion for summary judgment be granted and that appellees take nothing.