In The
Court of Appeals
For The
First District of Texas 
____________________
 
NO. 01-00-00050-CV
____________________

TESORO PETROLEUM CORPORATION AND TESORO 
E&P COMPANY, L.P., Appellants
V.
NABORS DRILLING USA, INC., Appellee

****

NABORS DRILLING USA, INC. ( ZURICH AMERICAN
INSURANCE COMPANY, SUBROGEE), Appellant
V.
TESORO PETROLEUM CORPORATION AND TESORO
E&P COMPANY, L.P., Appellees
                                                                                                                                      

On Appeal from the 234th District Court
Harris County, Texas
Trial Court Cause No. 98-12198
                                                                                                                                       
O P I N I O N
          Tesoro Petroleum Corporation and Tesoro E&P Company, L.P. (collectively
“Tesoro”) appeal a summary judgment requiring it to indemnify Nabors Drilling
USA, Inc. (Nabors) for settlement monies Nabors paid a third party as a result of an
oil well blowout. In five points of error, Tesoro contends the trial court erred in
granting summary judgment on Nabors’s indemnity claim because (1) Nabors’s
damages arose from a claim by LMP Petroleum Corporation (LMP) for gross
negligence and willful misconduct, which were specifically excluded from the
indemnity agreement; (2) the summary judgment evidence raised a disputed fact issue
as to whether Nabors had been grossly negligent in causing the blowout; (3)
negligence and gross negligence are separate causes of action, either of which can
lead to a judgment for compensatory damages; (4) a disputed issue of fact exists as
to whether Nabors breached the contract, excusing Tesoro of its duty to indemnify
Nabors; and (5) “Tesoro Petroleum Corporation” was not a party to the contract. 
          In a separate appeal, Nabors’s insurance carrier, Zurich American Insurance
Company (Zurich), appeals a summary judgment holding that it breached the drilling
contract by filing suit in subrogation to Nabors’s rights against Tesoro to recover
insurance proceeds Zurich paid Nabors for the loss of its rig. 
          We affirm the summary judgment granted on behalf of Nabors and reverse and
remand the summary judgment granted on behalf of Tesoro.
I. Factual and Procedural Background
          Tesoro entered into a Joint Operating Agreement with LMP to explore and
develop oil and gas property located in Webb County, Texas. As the “operator,”
Tesoro agreed to manage and control all operations related to the oil and gas
development of the property. Pursuant to the Agreement, Tesoro was authorized to
enter into an independent contract with a drilling contractor to drill the oil and gas
wells. 
A. The Drilling Contract
          Tesoro entered into a Daywork Drilling Contract with Nabors.


 As the “drilling
contractor,” Nabors agreed to drill Longoria No. 2, an oil well located in Webb
County, to maintain the drilling equipment and the well-control equipment, to prevent
and control fires and blowouts, and to protect the well hole. Nabors also agreed to
assume liability for losses to or destruction of its surface equipment and to release
Tesoro from liability for that damage. Tesoro assumed sole responsibility for damage
to or loss of the hole, released Nabors from liability for such damage or loss, and
indemnified Nabors against “any and all claims, liability and expense relating to such
damage or loss.” Each party also assumed liability and agreed to indemnify the other
“from and against all claims, demands, and causes of action” arising from the contract
in favor of the party’s own employees, subcontractors, or invitees “on account of
bodily injury, death or damage to property.” Tesoro and Nabors assumed the
foregoing indemnities and liabilities without regard to the cause, except and
excluding gross negligence or willful misconduct by either party.


 Each party 
agreed to maintain insurance for the liabilities it assumed under the drilling contract,
in the same kind and amount as the other party, and to cause its insurer to waive
subrogation to its rights against the other party for the liabilities contractually
assumed. 
          Before drilling, Nabors obtained a certificate of insurance listing Zurich as its
insurer for damage to Nabors’s drilling rig. Zurich’s certificate waived subrogation
to Nabors’s rights against Tesoro “only as required by signed written contract and
only insofar as liability is assumed by [Nabors] under signed written contract subject
always to the policy’s terms, conditions and exclusions.”
          One month after Nabors began drilling the Longoria No. 2 Well, the well began
flowing, but several of its blowout preventers (BOPs) began to leak. Longoria No.
2 eventually blew out and caught fire, destroying the drilling rig and rendering
Longoria No. 2 unworkable. Tesoro spent $425,400 to get the well under control and
an additional $404,900 to reimburse suppliers whose equipment was lost.


 
B. Webb County Lawsuit
          After the blowout, LMP, as a working interest owner in Longoria No. 2,
brought an action in Webb County against Nabors, alleging, among other things,
gross negligence and willful misconduct. Nabors sought indemnity from Tesoro. 
Tesoro intervened and sought a declaratory judgment as to whether it owed a duty to
indemnify Nabors. LMP then sued Tesoro.
          In early 1999, the Webb County suit settled, with Nabors paying LMP
$113,333 and Tesoro paying LMP $95,000. There was no admission of liability by
any party. Nabors’s demand for indemnity from Tesoro, Tesoro’s request for a
declaratory judgment regarding its duty to indemnify Nabors, and Tesoro’s claims
against Nabors were not resolved and remained pending in Webb County. 
C. Harris County Lawsuit
          In March 1998, while the Webb County suit was pending, Zurich, as Nabors’s
carrier, sued Tesoro in the 234th District Court of Harris County in Nabors’s name
and in subrogation to Nabors’s rights against Tesoro. Zurich sought recovery of the
insurance proceeds it paid to Nabors for the damage to Nabors’s equipment from the
blowout. The same day Zurich filed its suit, Tesoro’s carrier sued various parties, but
not Nabors, in the 190th District Court of Harris County, in connection with the
blowout. The two Harris County suits were consolidated in the 234th District Court
and form the basis of this appeal.
            After consolidation, Tesoro filed a counterclaim against Zurich, asserting,
among other things, that Zurich breached the drilling contract by filing suit in
subrogation against Tesoro. Tesoro also filed a claim against Nabors, asserting that
Nabors breached the drilling contract by providing faulty BOPs. Nabors then
asserted its indemnity claim against Tesoro for recovery of the costs of its defense
and settlement in the Webb County lawsuit, claiming that Tesoro had assumed
liability for the damage to the well and that Tesoro’s negligence or gross negligence
had caused the blowout. 
          Tesoro moved for summary judgment against Zurich and Nabors. The trial
court granted the motion “in its entirety.” However, in response to Nabors’s motion
for partial reconsideration, the court changed its order, granting Tesoro’s motion in
part and denying it in part. In its final summary judgment, the court denied Tesoro’s
motion for summary judgment against Nabors for breach of contract relating to the
BOPs. However, it granted Tesoro’s motion against Zurich, holding that Zurich
breached the waiver of subrogation clause in the indemnity provision of the drilling
contract by filing suit against Tesoro, and it awarded Tesoro damages against Zurich
for the breach. Tesoro and Zurich stipulated that Tesoro’s damages were $120,000
in addition to appellate attorneys’ fees.
           Nabors likewise filed a motion for summary judgment on its indemnity claim
against Tesoro. The trial court granted Nabors’s motion and denied all of Tesoro’s
claims against Nabors. After a bench trial on damages, the trial court awarded Nabors
$513,333, comprising $113,333 for the settlement payment to LMP in the Webb
County suit and $400,000 in legal fees and other defense costs incurred by Nabors in
that Webb County suit. The trial court also awarded Nabors $200,000 in legal fees
in the Harris County suit for prosecuting its breach of contract and indemnity claim.
The trial court additionally awarded Nabors $75,000 for appellate fees at the various
stages of appeals. Tesoro and Zurich/Nabors non-suited their claims against the other
defendants.
          Tesoro and Zurich have both appealed the summary judgments entered against
them.
II. Standard of Review
          A party moving for a traditional summary judgment has the burden of proving
that there is no genuine issue of material fact and that the movant is entitled to
judgment as a matter of law. Tex. R. Civ. P. 166a(c); Nixon v. Mr. Property Mgmt.
Co., Inc., 690 S.W.2d 546, 548 (Tex. 1985); Hernandez v. Koch Mach. Co., 16
S.W.3d 48, 51-52 (Tex. App.—Houston [1st Dist.] 2000, pet. denied). When
deciding whether there is a disputed material fact issue precluding summary
judgment, evidence favorable to the nonmovant will be taken as true. Nixon, 690
S.W.2d at 548-49. Every reasonable inference must be indulged in favor of the
nonmovant and any doubts resolved in its favor. Id. 
          A no-evidence summary judgment is improper if the nonmovant presents more
than a scintilla of probative evidence to raise a material fact question in response to
the motion. A. H. Belo Corp. v. Corcoran, 52 S.W.3d 375, 378 (Tex. App.—Houston
[1st Dist.] 2001, pet. denied). More than a scintilla of evidence exists when the
evidence presented arises to a level where reasonable and fair-minded people could
differ in their conclusions. Burroughs Wellcome Co. v. Crye, 907 S.W.2d 497, 499
(Tex. 1995). 
          A plaintiff, when moving for summary judgment, is not under any obligation
to negate affirmative defenses. An affirmative defense will prevent the granting of
summary judgment only if each element of the affirmative defense is supported by
summary judgment evidence. Kirby Explor. Co. v. Mitchell Energy Corp., 701
S.W.2d 922, 926 (Tex. App.—Houston [1st Dist.] 1985, writ ref’d n.r.e.). A party
raising an affirmative defense in opposition to a motion for summary judgment must
either (1) present a disputed fact issue on the opposing party’s failure to satisfy his
own burden of proof or (2) establish at least the existence of a fact issue on each
element of his affirmative defense by summary judgment proof. ‘Moore’ Burger, Inc.
v. Phillips Petrol. Co., 492 S.W.2d 934, 936-37 (Tex. 1972).
III. Tesoro’s Appeal
          Tesoro appeals the summary judgment entered against it and in favor of
Nabors. That judgment held that Nabors was entitled to indemnity under the drilling
contract as a matter of law, awarded Nabors damages for Tesoro’s breach of the
indemnification agreement, and denied Tesoro’s claims for damages against Nabors
for providing faulty blowout preventers. A. Indemnity Claim and Gross Negligence
          Tesoro contends that the trial court erred in requiring it to indemnify Nabors
for the payment Nabors made to LMP to settle the Webb County suit because LMP’s
claims against Nabors were for Nabors’s gross negligence and willful misconduct,
claims for which Tesoro did not agree to indemnify Nabors.
          Under the drilling contract, Nabors agreed to furnish “equipment [and] labor
and perform services . . . under the direction, supervision and control” of Tesoro. 
Tesoro assumed liability for any “damage to or loss of the hole,” released Nabors
from “any liability for damage to or loss of the hole,” and agreed to defend and
indemnify Nabors from all claims “relating to such damage to or loss of the hole.”
The contract further stated: 
[I]t is the intent of parties hereto that all indemnity obligations . . .
assumed by such parties . . . be without limit and without regard to the
cause or causes thereof including . . . the negligence of any party or
parties, whether such negligence be sole, joint, or concurrent, active or
passive.

Tesoro added the next line which read, “but excluding the gross negligence or willful
misconduct of a party hereto.” Nabors did not object and began operating under the
contract.
          Tesoro contends that it is not required to indemnify Nabors for Nabors’s
defense against the claims made by LMP in the Webb County suit and Nabors’s
settlement of those claims. To support its position, Tesoro refers us to Fisk Electric
Co. v. Constructors & Assocs., Inc., 888 S.W.2d 813, 815-16 (Tex. 1994). In Fisk,
the supreme court held:
Without an express reference in the indemnification provision to claims
based upon negligence, there is no indemnity for defense costs incurred
in connection with a negligence claim irrespective of whether the claim
is ultimately proved.

Id. In the context of this case, Fisk does not apply. The question in the Fisk case was
whether an indemnitor had a duty to provide a defense against negligence to the
indemnitee when it was unclear whether the indemnity agreement covered
negligence. The question posed in Tesoro’s appeal is not whether the indemnity
provisions of the drilling contract expressly cover negligence and exclude gross
negligence. Both parties agree that they do. The question is whether Nabors
committed gross negligence.
          A contractual right to indemnity should be determined in the same fashion as
other contractual rights — as a matter of law. Fisk, 888 S.W.2d at 815. Construing
the indemnity agreement under the normal rules of contract construction, it is clear
the intent of the parties was for Tesoro to indemnify Nabors for any acts except those
stemming from gross negligence and willful misconduct. See Balandran v. Safeco
Ins. Co., 972 S.W.2d 738, 741 (Tex. 1998); Associated Indem. Corp. v. CAT
Contracting, Inc., 964 S.W.2d 276, 284 (Tex. 1998). 
          Tesoro contends, however, that it need show only that LMP’s pleadings in the
Webb County suit asserted that Nabors’s gross negligence and willful misconduct
caused LMP’s losses to take away Tesoro’s obligation to indemnify Nabors against
those claims. Facts, however, not allegations, determine an indemnitor’s duty to
indemnify. The duty to defend may be triggered by the pleadings, but the duty to
indemnify is based on the jury’s findings. See Farmers Tex. County Mut. Ins. Co. v.
Griffin, 955 S.W.2d 81, 82 (Tex. 1997). Here, Nabors settled the Webb County
lawsuit with LMP, and there was no admission of liability.


 
          We must now determine if Nabors’s claim is precluded by the gross negligence
and willful misconduct exclusion. A claim that a contractual exclusion precludes
indemnity is an affirmative defense. Delta Eng’g Corp. v. Warren Petroleum, Inc.,
668 S.W.2d 770, 773 (Tex. App.—Houston [1st Dist.] 1984, writ ref’d n.r.e.). In
Delta, the court stated, “If the indemnitor should later deny coverage under the
contract, whether due to a contractual exclusion, or for some other reason, it is such
party’s burden to affirmatively state the justification for his refusal to indemnify.” 
Id. Tesoro plead, by way of affirmative defense, that indemnification was improper
based on Nabors’s gross negligence or willful misconduct, i.e., a contract exclusion.
          In support of its affirmative defense, Tesoro bore the burden to raise a fact
issue on each and every element of Nabors’s alleged gross negligence or willful
misconduct so as to bring Nabors’s indemnity claim within the exclusions in the
indemnity agreement. See Kirby Explor. Co., 701 S.W.2d at 926.
          The extent to which Tesoro directly addressed the gross negligence evidence
in its response to Nabors’s motion for partial summary judgment can be quoted in two
lines: “Likewise, there is summary judgment evidence which specifically shows that
Nabors was grossly negligent, which would preclude it from any indemnity. See
Affidavit of Mike Smith, attached to Tesoro’s Motion for Summary Judgment.” 
          A review of the six-page affidavit of Mike Smith, Tesoro’s retained expert,
reveals that, despite assertions regarding improper conduct by Nabors on the job,
Smith did not give an expert opinion that improperly maintained BOPs caused the
Longoria No. 2 blowout and the resulting damages. Therefore, Tesoro failed to
demonstrate a genuine issue of material fact relating to the specific element of
causation necessary to maintain its affirmative defense of gross negligence.
          We overrule Tesoro’s issues one and two and affirm the award of damages on
these issues.
B. Compensatory Damages
          In issue three, Tesoro asserts that Texas law allows a jury to award
compensatory damages for gross negligence and willful misconduct; thus, the fact
that the LMP settlement did not include punitive damages is of no consequence.
          Tesoro asks this Court to hold that “gross negligence is a separable cause of
action from ordinary negligence that independently supports the recovery of
compensatory damages.”
          Negligence and gross negligence are not separable causes of action, but are
inextricably intertwined. Negligence is a liability finding, involving duty, breach, and
causation. Gross negligence presumes a negligent act or omission and includes two
further elements:
(1) viewed objectively from the standpoint of the actor, the act or
omission [i.e., harm-causing negligence] must involve an extreme
degree of risk, considering the probability and magnitude of the
potential harm to others, and (2) the actor must have actual, subjective
awareness of the risk involved, but nevertheless proceed in conscious
indifference to the rights, safety, or welfare of others.

Transp. Ins. Co. v. Moriel, 879 S.W.2d 10, 23 (Tex. 1994). We agree with the San
Antonio Court of Appeals, which has held “the absence of a viable negligence claim
removes any justification for imposing actual damages.” Newman v. Tropical
Visions, Inc., 891 S.W.2d 713, 722 (Tex. App.—San Antonio 1994, writ denied). 
That court further held that, in the context of a release for acts of negligence,
negligence and gross negligence are not separable. Id. We agree.
          We overrule Tesoro’s issue three.
C. Breach of Contract Fact Issue
          In issue four, Tesoro argues that the trial court erred in granting summary
judgment to Nabors because a disputed issue of fact exists as to whether Nabors
breached the contract, excusing Tesoro of its duty to indemnify Nabors.
          Tesoro contends Nabors breached the paragraph in the drilling contract that
provided: “[Nabors] shall maintain well control equipment in good condition at all
times and shall use all reasonable means to prevent and control fires and blowouts
and to protect the hole.” It alleges this breach occurred when the BOPs failed
because 
Nabors chose to buy and install inferior and improper products into
BOPs that did not have proven capacities or technical support that
would maintain the well control equipment in good condition at all
times.

Tesoro claims these actions breached the contract, and they also claim Nabors was
grossly negligent for buying and installing the “inferior and improper” products.
          As Nabors stated, Nabors’s conduct in supplying well control equipment was
either: (1) prudent; (2) negligent; (3) grossly negligent; or (4) intentional misconduct. 
Tesoro failed to raise a fact issue that Nabors’s conduct was grossly negligent, and
no party has alleged intentional misconduct. Thus, Nabors’s conduct was either
prudent or it was negligent. If the conduct was prudent, the conduct was not
actionable. If the conduct was negligent, Tesoro is required to indemnify Nabors
under its contract with Nabors. Either way, Tesoro’s argument fails.
          Tesoro further contends that indemnity is a dependant covenant; therefore, a
breach of a part of the indemnity agreement excuses Tesoro from indemnifying
Nabors at all. We disagree.
          An indemnity agreement “is an original obligation between the contracting
parties and independent of other agreements.” Joseph Thomas, Inc. v. Graham, 842
S.W.2d 343, 346 (Tex. App.—Tyler 1992, no writ). A prerequisite to the remedy of
excuse of performance is that covenants in a contract must be mutually dependent
promises. Hanks v. GAB Bus. Serv., 644 S.W.2d 707, 708 (Tex. 1982). Because an
indemnity agreement is an independent covenant, Tesoro is not excused from
performing under the contract based on unsupported allegations that Nabors breached
the contract.
          We overrule Tesoro’s issue four.
D. Party to Contract
          In issue five, Tesoro argues the trial court erred in granting summary judgment
against “Tesoro Petroleum Corporation” because it is not a party to the contract.
          The final judgment signed by the trial court includes “Tesoro Petroleum
Corporation.” Tesoro argues this was improper because Tesoro E&P, the limited
partnership, is the only Tesoro entity that signed the drilling contract. Tesoro
Petroleum concedes it did not raise this point in the trial court. As such, the issue is
not properly before our Court. To preserve an issue for appellate review, an issue
must be raised with the trial court. Tex. R. App. P. 33.1.
          We overrule Tesoro’s issue five.
E. Tesoro’s Conditional Points 
          Tesoro raises two conditional issues dependent on our decision on Zurich’s
appeal, but provides inadequate briefing on the two conditional points. The brief
“must contain a succinct, clear, and accurate statement of the argument made in the
body of the brief.” Tex. R. App. P. 38.1(g). Rule 38 requires Tesoro to provide us
with such discussion of the facts and the authorities relied upon as may be requisite
to maintain the point at issue. See Franklin v. Enserch, Inc., 961 S.W.2d 704, 711
(Tex. App.—Amarillo 1998, no pet.). This is not done by merely uttering brief
conclusory statements, unsupported by legal citations. Id. By presenting such
attenuated, unsupported argument, Tesoro waives its complaints. See id.
          We overrule Tesoro’s conditional issues.
IV. Zurich’s Appeal



          Zurich appeals the trial court’s summary judgment against it, and in favor of
Tesoro, holding that Zurich breached the drilling contract by filing suit in subrogation
to its insured’s, Nabors’s, claims against Tesoro and awarding Tesoro damages and
attorneys’ fees against Zurich. Zurich raises six issues for our review.
          In issue one, Zurich argues that the trial court improperly granted summary
judgment on claims that had been dismissed. In issue two, Zurich contends that the
indemnity agreement in the drilling contract is void and that the waiver of
subrogation provision, which is limited to liabilities assumed under the indemnity
agreement, is unenforceable. In issue three, Zurich argues that the waiver of
subrogation provision does not apply to claims for gross negligence or willful
misconduct. In issue four, Zurich argues that the waiver of subrogation provision
does not apply to waive subrogation under the Zurich policy because Zurich’s policy
is not a liability policy and does not provide any liability coverage.


 In issue five,
Zurich contends the indemnity agreement, which provides for the parties’ waiver of
their insurers’ subrogation rights, is void under the Texas Oilfield Anti-Indemnity Act
(TOAIA). It bases its contention on the premise that “the insurance procurement
provision (including the waiver of subrogation provision therein), which directly
supports the indemnity and release agreements of the contract, is void under the
TOAIA.” In issue six, Zurich argues that Tesoro’s no-evidence motion for summary
judgment was not granted or was improperly granted.
 
A. Enforceability of the Waiver of Subrogation 

          We first address issues two and five.
          1. Applicability of the TOAIA
          In issues two and five, Zurich contends that the indemnity agreement in the
drilling contract between Tesoro and Nabors is void and, therefore, the waiver of
subrogation rights, which is specifically limited to those liabilities assumed by the
contracting parties, is unenforceable.
          In issue five, Zurich contends that the assumption of liability provision to
which Nabors agreed is void under the Texas Oilfield Anti-Indemnity Act (TOAIA). 
See Tex. Civ. Prac. & Rem. Code Ann. §§ 127.001-127.007 (Vernon 1997). The
TOAIA provides that an indemnification provision in a contract pertaining to an oil
or gas well that purports to indemnify a person against loss or liability for damages
that result from the negligence of the indemnitee and arise from personal injury,
death, or property injury is against public policy and void unless the conditions of
section 127.005 of the Act are met. See Tex. Civ. Prac. & Rem. Code § 127.003.
          Section 127.005 of the TOAIA, the safe harbor provision, states the Act does
not apply to agreements that state in writing that the indemnity obligation will be
supported by liability insurance coverage to be furnished by the indemnitors,
provided that, in the case of a mutual indemnity obligation, “the indemnity obligation
is limited to the extent of the coverage and dollar limits of insurance . . . each party
as indemnitor has agreed to obtain for the benefit of the other party as indemnitee”
or, in the case of a unilateral indemnity obligation, the amount of insurance coverage
is limited to $500,000. See Tex. Civ. Prac. & Rem. Code § 127.005.


 The TOAIA 
defines a “mutual indemnity obligation” as
an indemnity obligation in an agreement pertaining to a well for oil . . .
in which the parties agree to indemnify each other . . . against loss,
liability, or damages arising in connection with bodily injury, death, and
damage to property of the respective employees, contractors or their
employees, and invitees of each party arising out of or resulting from the
performance of the agreement. 

Tex. Civ. Prac. & Rem. Code § 127.001(3). Zurich argues that the indemnity
agreement between Nabors and Tesoro does not qualify as a mutual indemnity
obligation and that the amount of insurance is not limited to $500,000, so the
agreement satisfies neither condition of an enforceable indemnity agreement
pertaining to an oil or gas well.
          As noted above, the indemnity agreement signed by Nabors and Tesoro is part
of a standard form drilling contract drafted by the IADC that is frequently used in the
well-drilling business. Paragraph 13 of the drilling contract, the insurance and waiver
of subrogation provision, states that both Nabors and Tesoro will maintain, at their
own expense, insurance coverage “of the same kind and in the same amount” as is
required of the other, insuring the liabilities that are assumed in paragraph 14 of the
drilling contract. Both parties also agree to cause their insurers to waive subrogation
against the other for the liabilities that are assumed by the insured. Paragraph 13,
therefore, tracks the insurance requirements of section 127.005 of the TOAIA.
          Paragraph 14 of the drilling contract provides for indemnities and releases
between the parties. In section 14.1, Nabors agrees to assume liability for damage to
its rig and to release Tesoro from such liability. In section 14.5, Tesoro releases
Nabors from liability “for damage to or loss of the hole” and agrees to “protect,
defend, and indemnify [Nabors] from and against any and all claims, liability, and
expense relating to such damage to or loss of the hole.” Finally, in sections 14.8 and
14.9 of the contract, Nabors and Tesoro agrees to release each other from liability and
to indemnify each other “from and against all claims” arising in connection with the
subject matter of the drilling contract in favor of the indemnitor’s own employees,
contractors or invitees “on account of bodily injury, death, or damage to property.”
          Zurich, focusing solely on Nabors’s release of Tesoro from liability for
damages to Nabors’s rig as found in section 14.1, contends that this provision is a
release, not an indemnity, destroying the mutuality of the indemnification agreement.



 The indemnity agreement, it argues, therefore fails to satisfy the requirements of the
TOAIA safe harbor provisions and is void, and the waiver of subrogation, which is
limited to the liabilities assumed in the indemnification provisions, is unenforceable. 
In support of its argument, Zurich points out that the supreme court has held that the
type of assumption of liability in paragraph 14.1 is a type of “release.” Dresser Indus.
Inc. v. Page Petroleum, Inc., 853 S.W.2d 505, 508 (Tex. 1993). 
          Zurich, however, overlooks the provisions of the agreement in which Tesoro
and Nabors both agree to indemnify each other against claims by their own
employees, contractors and invitees for personal injury, death, and property injury
resulting from their own negligence; both agree to exclude claims for gross
negligence and willful misconduct from the indemnification and release provisions;
and both agree to maintain insurance in the same amount insuring against the
liabilities assumed under the contract and to provide for waiver of their insurers’ right
of subrogation for the those liabilities. Mutuality thus extends to every provision of
the indemnity agreement except paragraph 14.1.
          Zurich also overlooks the simple reason for the disparity between the release
from liability agreed to by Nabors in section 14.1 and the indemnification and release
agreed to by Tesoro in the parallel section, section 14.5. This reason is that, once
liability to employees, contractors, and invitees for loss of life, injury, or property loss
is covered by other indemnity provisions in the contract, no one but Nabors, the
drilling contractor, could suffer from loss of the rig (the subject matter of paragraph
14.1), whereas others besides Tesoro or Nabors could easily suffer from the loss of
the well, to wit, a working interest owner such as LMP (the subject matter of
paragraph 14.5), and could seek to recover its losses from the drilling contractor. 
Any indemnity Nabors could give to Tesoro for claims against it for loss of the rig
would be superfluous; whereas Tesoro’s indemnification against claims made against
Nabors is not superfluous. We decline to hold that mutuality is destroyed by the
failure to include meaningless indemnification provisions in a mutual indemnification
obligation. The mutuality of the indemnity agreement is not destroyed by Nabors’s
giving Tesoro a release in paragraph 14.1 without also agreeing to a meaningless
indemnity for Tesoro against claims no one but Nabors could have.
          Moreover, it seems clear that the supreme court would hold that the inclusion
of a release where only a release makes sense is not enough to destroy the mutuality
required for an enforceable indemnification agreement relating to an oil and gas well.
The supreme court has only once addressed the issue of whether “release” language
is subject to the TOAIA, and that was in a footnote in Dresser. The footnote stated,
“Although we do note that today’s holding would suggest that chapter 127 would
apply to releases as well as to indemnity agreements, we do not need to reach the
merits of such an argument.” Dresser, 853 S.W.2d at 510 n.5. We believe this
footnote was judicial dictum meant to guide us. See Palestine Contractors, Inc. v.
Perkins, 386 S.W.2d 764, 773 (Tex. 1964) (holding that judicial dictum should be
followed unless found to be erroneous); see also, R.R. Comm’n v. Aluminum Co. of
Am., 380 S.W.2d 599, 601 (Tex. 1964) (declaring that dictum in earlier case was
deliberately made to put others on notice of the court’s intent). As such, we hold the
TOAIA applies to releases such as those found in the contract at issue. Our decision
does not conflict with the supreme court’s decision in Getty Oil Co. v. Ins. Co. of N.
Am., 845 S.W.2d 794 (Tex. 1992), which held that “the language of [section 127]
applies exclusively to indemnity agreements.” Getty, 845 S.W.2d at 804. The Getty
court was determining the applicability of “insurance shifting” schemes that are not
present in our case. See id. And, in any event, the agreement, taken as a whole, is an
indemnification agreement.
          Applying the usual standards of contract interpretation, therefore, we hold that
the indemnification and release provisions of the drilling contract, taken together,
constitute a “mutual indemnity obligation” as defined in the TOAIA and that the
agreement complies with the safe harbor requirements of the TOAIA for enforceable
indemnity agreements pertaining to an oil or gas well. See Tex. Civ. Prac. & Rem.
Code §§ 127.001(3); 127.005. We further hold that Nabors’s waiver of its insurers’
subrogation rights as to claims for which liability is assumed by Nabors under the
contract is enforceable.
2. The TOAIA’s “fair notice ” requirements
          As part of issue two, Zurich further contends that, “to be enforceable,
paragraph 14.1 must both be conspicuous and meet the express negligence test.” 
Zurich makes this statement to reinforce its argument that Nabors’s release of
subrogation rights in the drilling contract was void and unenforceable.
          The “fair notice” requirements of express negligence and conspicuousness
apply to indemnity agreements because “these particular agreements are used to
exculpate a party from the consequences of its own negligence.” Dresser, 853
S.W.2d at 508. The “express negligence doctrine” mandates that a party seeking
indemnity from the consequences of its own negligence must express that intent in
specific terms in the indemnity agreement. Id. “Conspicuousness,” as part of the fair
notice test of an indemnity agreement, mandates that there must be something on the
face of an indemnity agreement to attract the attention of a reasonable person. 
Dresser, 853 S.W.2d at 508. The supreme court has held that the fair notice
requirements of express negligence and conspicuousness apply to both releases and
indemnities. Id. at 509.
                    a. The express negligence doctrine
          The indemnity agreement in the drilling contract satisfies the express
negligence test. Under the contract, Nabors assumes liability for damage to or loss
of its drilling rig and Tesoro assumes liability for “damage to or loss of the hole.”
Each releases the other from liability for damages or loss with respect to the
contractually assumed liabilities and agrees to defend and indemnify the other from
all such losses. Tesoro also agrees to release Nabors from liability for claims relating
to such damage to or loss of the hole and to indemnify it against such claims. 
Paragraph 14.3 states the intention of the parties that
all indemnity obligations and/or liabilities assumed by such parties under terms
of this contract, including without limitation, paragraphs 14.1 through 14.12
hereof, be without limit and without regard to the cause or causes thereof,
including . . . the negligence of any party or parties, whether such negligence
be sole, joint or concurrent, active or passive, but excluding the gross
negligence or willful misconduct of a party hereto.

(Emphasis added.) 
          The Texas Supreme Court has explicitly held that the precise language in an
oil and gas drilling contract that appears in the standard form contract used by Nabors
and Tesoro and that indemnifies parties against bodily injury, death, and property
claims of its employees or contractors “without limit and without regard to the cause
or causes thereof or the negligence of any party or parties,” indemnifies a party
“clearly and unequivocally against its own negligence,” satisfying the express
negligence doctrine. Maxus Exploration v. Moran Bros., 817 S.W.2d 50, 56 (Tex.
1991). Construing the indemnity agreement under the normal rules of contract
construction and in light of authority, therefore, we find that the express intent of the
parties was for Tesoro to indemnify Nabors for any acts, including acts of negligence,
except those stemming from gross negligence and willful misconduct. The indemnity
agreement meets the express negligence requirement.
                    b. Conspicuousness
          Paragraph 14 of the drilling contract, providing for indemnification and release,
is labeled “RESPONSIBILITY FOR LOSS OR DAMAGE, INDEMNITY, RELEASE
OF LIABILITY AND ALLOCATION OF RISK.” (Capitals in original.) Similarly,
paragraph 13 is labeled in capital letters, “INSURANCE.” We find that both
provisions would attract the attention of a reasonable person. Moreover, Zurich
cannot claim to have been unaware of the provisions of the drilling contract regarding
indemnification, release, and insurance, because it relied upon the language of these
provisions in delineating its reservation of rights in its certificate of insurance. We
hold that paragraphs 14 and 13 are both conspicuous and meet the fair notice test.
          Having determined that the indemnification and release provisions in the
drilling contract meet the fair notice test and that the agreement satisfies the “safe
harbor” provisions of section 127.005 of the TOAIA, we hold that the
indemnification agreement between Tesoro and Nabors is valid and that the parties’
agreement to provide for the waiver of subrogation by their insurers for liabilities
assumed under the contract is enforceable.
          We overrule Zurich’s issues two and five.
Zurich’s Right to Subrogation to Nabors’s Gross Negligence Claims

          In issue three, Zurich argues that the waiver of subrogation provision in the
indemnity agreement does not apply to Nabors’s claims for gross negligence or
willful misconduct against Tesoro. Zurich contends such claims are specifically
excluded from the assumption of liability provision of the contract and the
indemnification provision, with its waiver of subrogation, even if valid, does not
extend to liabilities Tesoro chose to exclude from that provision. Therefore, Zurich
was entitled to bring claims for gross negligence or willful misconduct against Tesoro
in subrogation to Nabors’s rights.
          “Subrogation” is the right of one who has paid an obligation that another
should have paid to be indemnified by the other. Texas Ass’n of Sch. Bds., Inc. v.
Word, 18 S.W.3d 256, 258 (Tex. App.—Waco 2001, pet. denied). The object of such
subrogation is to prevent the insured from receiving a double recovery. Argonaut
Ins. Co. v. Allstate Ins. Co., 869 S.W.2d 537, 541 (Tex. App.—Corpus Christi 1993,
writ denied). An insurer’s right to subrogation derives from the rights of the insured
and is limited to those rights. Interstate Fire Ins. Co. v. First Tape, Inc., 817 S.W.2d
142, 145 (Tex. App.—Houston [1st Dist.] 1991, writ denied). A release between the
insured and an offending party prior to a loss destroys the insurance company’s rights
by way of subrogation. Id.
          Here, Zurich seeks to recover from Tesoro reimbursement for the insurance
proceeds Zurich paid Nabors for the damage to Nabors’s equipment after the blowout. 
As part of its indemnification agreement with Tesoro, Nabors contractually waived
Zurich’s right of subrogation to the rights of Nabors against Tesoro for losses caused
by Tesoro’s negligence. Zurich, however, in its point of error three, contends that
Tesoro was primarily liable for Nabors’s losses because they resulted from Tesoro’s
gross negligence in maintaining the Longoria No. 2 well. 
          A contractual right to indemnity should be determined in the same fashion as
other contractual rights—as a matter of law. Fisk, 888 S.W.2d at 815. A liability
insurer for an oil well driller or operator does not waive its right to subrogation to its
insured’s claims against the other party for matters beyond the scope of the indemnity
agreement between those parties. See Ken Petroleum Corp. v. Questor Drilling
Corp., 24 S.W.3d 344, 355 (Tex. 2000) (a waiver of subrogation by an oil well
operator or drilling contractor for liabilities assumed under the contract does not
waive the insurer’s right to subrogation to enforce the indemnity agreement). The
parties to the indemnity agreement must look to their own contract to determine what
subrogation rights they may insist that the other party require its insurers to waive.
Id. at 356-57. Where a party to an indemnity contract relating to an oil and gas well
is not contractually obligated to enforce a waiver of subrogation, the other party
cannot insist that it assert a waiver of subrogation. See id. at 356.
          In this case, the indemnity agreement between Nabors and Tesoro plainly limits
the parties’ waiver of subrogation to the liabilities each assumed under the drilling
contract. Nabors did not assume liability for losses to its rig caused by Tesoro’s gross
negligence. Tesoro remained liable for such losses. Nabors, however, recovered its
losses from its insurance carrier, Zurich. Therefore, if Nabors were to bring suit
against Tesoro to recover for the loss of its rig, it would be seeking a double recovery
for the same loss from both Zurich and Tesoro. We hold, therefore, that Zurich, in
subrogation to Nabors’s rights against Tesoro for gross negligence, is not barred from
seeking recovery from Tesoro of the insurance proceeds Zurich paid Nabors.
          We overrule Zurich’s issue three to the extent it contends that Zurich has a
right of subrogation to those claims against Tesoro as to which Nabors assumed
liability under the indemnity agreement in the drilling contract and waived its
insurers’ subrogation rights. We sustain issue three to the extent it contends that
Zurich is not barred from bringing suit against Tesoro in subrogation to Nabors’s
claims for losses to Nabors’s due to Tesoro’s gross negligence or willful misconduct,
which are beyond the scope of the indemnity agreement.
C. The No-Evidence Summary Judgment
            In issue six, Zurich argues that the no-evidence summary judgment was
improperly granted.
          On August 9, 1999, the trial court signed an amended order on Tesoro’s motion
for partial summary judgment. On appeal, Zurich argues that this order is ambiguous
because it does not specifically state that the court is granting a no-evidence summary
judgment. Tesoro filed its motion for partial summary judgment “pursuant to Rules
166a(c) and 166a(i),” thus encompassing both traditional and no-evidence summary
judgments. We, therefore, consider the trial court’s summary judgment with respect
to both subsections of rule 166a.
          To establish its right to summary judgment, Tesoro had to establish as a matter
of law (1) that the indemnity agreement between itself and Nabors, including each
party’s waiver of its insurer’s subrogation rights for liabilities assumed by that party,
was valid and enforceable, (2) that the subrogation rights Zurich was attempting to
enforce against Tesoro had been waived, and (3) that Zurich’s filing suit in
subrogation to Nabors’s rights against Tesoro constituted a breach of the drilling
contract. We have held that the indemnity agreement is enforceable and Nabors
waived Zurich’s right to subrogation as to losses for which Nabors assumed liability.
However, Nabors did not assume liability for losses to itself caused by Tesoro’s gross
negligence or willful misconduct, and it did not waive Zurich’s right to subrogation
to recover insurance proceeds it had paid Nabors for such losses. Therefore, to defeat
Tesoro’s right to summary judgment, Zurich had to raise a fact issue as to whether its
damage claims lay outside the scope of the indemnity agreement. See Tex. R. Civ.
P. 166a(c), (i). Specifically, Zurich had to produce more than a scintilla of probative
evidence that the blowout was caused by Tesoro’s gross negligence, evidence on the
basis of which “reasonable and fair-minded people could differ.” See Burroughs
Wellcome Co., 907 S.W.2d at 499.
          To raise a fact issue with respect to Tesoro’s gross negligence, Zurich
presented the affidavit of Warren Guidry, its expert. Having established his
credentials as a petroleum engineer with knowledge of the relevant facts, Guidry
testified by affidavit that Tesoro, as the operator of the Longoria No. 2 well, should
have stopped the drilling of the Longoria No. 2 well at the depth of 8973 feet and
inserted a liner in the hole prior to resuming drilling. Guidry testified that this act
would have prevented the blowout. He further testified that Tesoro provided
inadequate well-site supervision by drilling further without setting a liner, by
allowing the well to flow repeatedly without shutting it in, and “by allowing an
uncontrollable amount of influx and unloading the well.” Guidry testified that these
acts were done with Tesoro’s full knowledge of the dangers associated with them and
with conscious indifference to the rights, safety, or welfare of others. He concluded
that Tesoro was grossly negligent and that its negligence and gross negligence
proximately caused the loss of Nabors’s rig.
          We find a trier of fact must be guided solely by expert opinion testimony with
respect to the matters to which Guidry’s affidavit testifies and the affidavit is clear,
positive, and direct, otherwise credible and free from contradictions and
inconsistencies and could have been readily controverted. See Tex. R. Civ. P.
166a(c). We further find that reasonable and fair-minded people could differ in their
conclusions as to whether the acts and omissions testified to by Guidry were the result
of Tesoro’s conscious indifference to the right or welfare of affected persons, as
required to establish gross negligence. See Luna v. North Star Dodge Sales, Inc., 667
S.W.2d at 118. We therefore hold that Zurich raised a material fact issue as to
whether the blowout of the Longoria No. 2 well was caused by Tesoro’s gross
negligence. 
           We sustain Zurich’s issue six and reverse the summary judgment entered
against Zurich in favor of Tesoro. Because the foregoing issues are dispositive of
Zurich’s appeal, we need not address its remaining issues.
V. Conclusion
          We affirm the trial court’s summary judgment requiring Tesoro to indemnify
Nabors. We reverse the summary judgment decreeing that Zurich breached the
waiver-of-subrogation agreement by filing suit in subrogation to Nabors’s rights
against Tesoro. We remand Zurich’s cause of action to the trial court.

                                                             Davie L. Wilson
                                                             Justice
 
Panel consists of Justices Jennings and Wilson.




Former Chief Justice Michael H. Schneider, who sat on the original panel for this
appeal, was appointed Justice of the Texas Supreme Court on September 6, 2002 and
did not participate in this Opinion.

Publish. Tex. R. App. P. 47