Reversed and Rendered and Opinion filed September 15, 2005









Reversed and Rendered and Opinion filed September 15,
2005.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00491-CV

 

______________________

 

CYNTHIA ENGLISH
d/b/a ENGLISH LAND SERVICE and AMERICAN STATES INSURANCE COMPANY, Appellants

 

V.

 

BGP INTERNATIONAL,
INC.,
Appellee

 



 

On Appeal from the 334th
District

Harris County, Texas

Trial Court Cause No. 02-56835

 



 

O P I N I O N








This appeal arises from a dispute over
responsibility for providing a defense in a series of underlying lawsuits.  Cynthia English d/b/a English Land Service and
American States Insurance Company[1]
(collectively, AEnglish@), appeal from the
trial court=s order denying their motion for summary
judgment and granting the motion for summary judgment of BGP International,
Inc. (ABGP@).  We reverse and remand.

Factual and Procedural Background

BGP contracted with English to provide
seismic exploration services on land located in Hidalgo County.  The land was owned by approximately 15,000
different parties.  Before BGP could
commence their exploration activities, each of the affected landowners had to
consent.  BGP, however, began operations
before all of the Hidalgo County landowners gave permission.[2]  Subsequently, 43 of the owners filed suit in
Hidalgo County against BGP, English, and their affiliated entities for trespass
and various negligence actions.

Pursuant to an indemnity provision in the contract, English
asked BGP to defend it in the 43 underlying lawsuits.  The provision specifically required BGP to:

[P]rotect, defend, indemnify and hold harmless [English] .
. . against loss or damage arising out of any claim or suit, including trespass
(whether geophysical or surface), property loss or damage, or any civil fines or
penalties imposed . . . resulting from operations when BGP . . . commence[s]
field operations without the permit acquisition of 100% of the mineral owners
and 100% of the surface owners, or any claim or suit arising out of the
negligent actions or omissions of BGP . . . .

When BGP refused to provide a defense, English filed
suit in Harris County seeking a declaratory judgment that BGP was required to
defend and indemnify English against the Hidalgo County actions.  








Subsequently, both parties moved for
summary judgment.  The trial court denied
English=s motion and
granted BGP=s motion. 
Accordingly, the court dismissed English=s suit without
prejudice and explained that English=s request for
indemnification was premature and not ripe for adjudication until after the
conclusion of the underlying Hidalgo County lawsuits.                   

On appeal, English contends the trial
court erred in denying its request for declaratory judgment.  English argues that BGP is required to pay
for defense of the 43 Hidalgo County suits despite the unresolved nature of
those actions because that is what the parties intended when they
contracted.  BGP, on the other hand,
argues that the issue of who bears responsibility to pay for English=s defense is
non-justiciable until such time that the Hidalgo County suits are resolved,
either by settlement or judgment.  BGP
also claims the express negligence doctrine precludes English from shielding
itself from its own negligence.  Thus,
the ultimate issue presented to this court is whether BGP owes a duty to step
in and defend English in the landowner lawsuits.[3]

Standard
of Review

To prevail on a
motion for summary judgment, the movant must establish that no genuine issue of
material fact exists and that it is entitled to judgment as a matter of
law.   Tex.
R. Civ. P. 166a(c); Rhone‑Poulenc, Inc. v. Steel, 997
S.W.2d 217, 222 (Tex. 1999).  In
reviewing a trial court=s decision on a request for summary
judgment, we take as true all evidence favorable to the non-movant, and we make
all reasonable inferences in the non-movant's favor.  KPMG Peat Marwick v. Harrison County Hous.
Fin. Corp., 988 S.W.2d 746, 478 (Tex. 1999).  When, as in this case, the parties file
competing motions for summary judgment, and the trial court grants one motion
and denies the other, this court should review both parties= summary judgment
evidence and determine all questions presented. 
Comm'rs Court v. Agan, 940 S.W.2d 77, 81 (Tex. 1997).








We review declaratory judgments under the
same standards as other judgments and decrees.  See Tex.
Civ. Prac. & Rem.Code
Ann. ' 37.010 (Vernon 1997); City of
Galveston v. Giles, 902 S.W.2d 167, 170 (Tex. App.CHouston [1st
Dist.] 1995, no writ.).  We look to the
procedure used to resolve the issue at trial to determine the standard of
review on appeal.  Giles, 902
S.W.2d at 170.  Here, because the trial
court resolved the case on competing motions for summary judgment, we review
the propriety of the trial court=s denial of the
declaratory judgment under the same standards as we apply to review the summary
judgment. See Unauthorized Practice of Law Comm. v. Jansen, 816 S.W.2d 813,
814 (Tex. App.CHouston [14th Dist.] 1991, writ
denied).  Therefore, we must determine
whether the trial court properly denied English=s declaratory
judgment request and, if not, enter the judgment which should have been entered
by the trial court.

Justiciability

The trial court granted BGP=s request for
summary judgment on the basis that the issue is not justiciable until liability
has been determined in the 43 Hidalgo County lawsuits.  On appeal, English notes that there is little
case law regarding the timing of an indemnitor=s duty to defend
its indemnitee.  However, English argues
that the trial court=s decision was incorrect because, unlike
the duty to indemnify, the duty to defend can arise before liability is
determined.  Specifically, English
differentiates between the duty to defend and the duty to indemnify,
and argues that BGP=s duty to provide a defense to the 43
Hidalgo County lawsuits arose separate and apart from its duty to
indemnify.  Furthermore, English
analogizes BGP=s contractual obligation to defend with
that of an insurer=s duty to defend its insured in an
insurance policy.  Drawing that parallel,
English argues that the contract imposed upon BGP the duty to pay for or
provide a defense to the Hidalgo County lawsuits independent from BGP=s duty to
indemnify.  Otherwise, English contends,
BGP=s interpretation
of the contract would render the word Adefend@ meaningless.








BGP counters by arguing that a declaratory
judgment in favor of English would be an improper advisory opinion.  Specifically, BGP contends that the issue of
who bears the responsibility of providing a defense to the Hidalgo County
lawsuits is an unripe, non-justiciable question until liability is established
in those underlying suits.  In support of
this contention, BGP relies on several cases which strictly limit the
justiciability of the right to indemnity.

Generally, when parties include an
indemnity provision in a contract, the duty to indemnify includes the duty to
pay for all costs and expenses associated with defending suits against the
indemnitee.  See, e.g.,
Fisk Elec. Co. v. Constructor=s & Assoc.,
Inc.,
888 S.W.2d 813, 815 (Tex. 1994) (A[An] obligation to
pay attorney=s fees arises out of [a] duty to
indemnify.@); Keystone Equity Mgmt. v. Thoen,
730 S.W.2d 339, 340 (Tex. App.CDallas 1987, no
writ) (AThe ordinary and
commonly accepted meaning of the phrase >indemnify, defend,
and save harmless= . . . encompasses attorney=s fees. . . . We
hold that [the] contractual promise to >defend . . . all suits in
connection with the premises= includes the
obligation to pay for the defense of such suits.@) (emphasis
added).  However, Aabsent a duty to
indemnify, there is no obligation to pay attorney=s fees.@  Fisk Elec. Co., 888 S.W.2d at
815.  BGP relies on this latter principle
to assert that because there has been no determination that it must indemnify
English, BGP has no responsibility to bear the costs of providing a defense for
English.  Instead, BGP claims its duty to
defend, or pay costs of defense, only arises if and when BGP is determined to
owe a duty of indemnification. 
Therefore, BGP concludes the duty to defend is not a justiciable
question until a determination has been made on the issue of liability.  However, numerous courts have held that the
duty to defend, unlike the duty to indemnify, is, in most situations, a
justiciable issue.[4]













 For
example, in Griffin, the Texas Supreme Court explained that A[a]n insurer=s duty to defend
and duty indemnify are distinct and separate duties.  Thus, an insurer may have a duty to defend
but, eventually, no duty to indemnify.@  955 S.W.2d at 82 (emphasis added).  Providing an example of how these two duties
might diverge, the court said Aa plaintiff
pleading both negligent and intentional conduct may trigger an insurer=s duty to defend,
but a finding that the insured acted intentionally and not negligently [i.e.,
not within the policy=s coverage] may negate the insurer=s duty to
indemnify.@  Id.  Therefore, Griffin makes it clear that
a party=s duty to defend
may arise even when it is later determined that the party has no duty to
indemnify.  See also Reser, 981
S.W.2d at 263 (noting that the duty to defend is unaffected by the ultimate
outcome of the case).  Because the duty
to defend may be decided in an action for declaratory judgment, the trial court
incorrectly determined that English=s claim was
premature.  See Johnson, 829 S.W.2d
at 324.[5]  We must next determine whether BGP had a duty
to defend and, therefore, whether English=s request for
declaratory judgment should have been granted.

Duty
to Defend

The duty to defend
is determined solely by the precise language in the contract and the factual
allegations in the pleadings.  Griffin,
955 S.W.2d at 82; see also Tesoro Petroleum Corp. v. Nabors Drilling USA,
Inc., 106 S.W.3d 118, 125 (Tex. App.CHouston [1st
Dist.] 2003, pet. denied) (AThe duty to defend
may be triggered by the pleadings, but the duty to indemnify is based on the
jury=s findings.@).  In interpreting the contractual language, our
primary concern is to ascertain the true intentions of both parties.  Tenneco Oil Co. v. Gulsby Eng=g, Inc., 846 S.W.2d 599,
606 (Tex. App.CHouston [14th Dist.] 1993, writ
denied).  We must give reasonable effect
to the provision and the contract as a whole. 
See Westwind Exploration, Inc. v. Homestate Sav. Ass=n, 696 S.W.2d 378,
382 (Tex. 1985) (explaining that because parties to a contract intend every
clause to have some effect, courts should attempt to provide a reasonable
interpretation of the contract); Keystone Equity Mgmt., 730 S.W.2d at
340 (explaining that courts should give words and phrases their ordinary and
commonly accepted meaning when determining the parties= intent in an
agreement); Manzo v. Ford, 731 S.W.2d 673, 676 (Tex. App.CHouston [14th
Dist.] 1987, no writ) (holding contract language must be construed by
determining how a reasonable man would have used and understood such language).








In addition, if the underlying pleadings
do not allege facts within the scope of the agreement, the indemnitor is not
required to defend a suit against its indemniteee.  E & L Chipping Co., 962 S.W.2d at
274.  In reviewing the pleadings, the
court must focus on the facts that show the origin of the damages rather than
on the particular legal theories alleged.  Griffin, 955 S.W.2d at 82; E & L
Chipping Co., 962 S.W.2d at 274B75; Tesoro
Petroleum Corp., 106 S.W.3d at 125. 
We do not consider the veracity of the allegations in the underlying
pleadings, read facts into the pleadings, or look outside the pleadings for
additional facts that could have been pled. 
E & L Chipping Co., 962 S.W.2d at 275 (citing Katerndahl
v. State Farm Fire and Cas. Co., 961 S.W.2d 518, 521 (Tex. App.CSan Antonio 1997,
no pet.)).[6]

The relevant language in the BGP-English
contract explicitly states that ABGP shall protect,
indemnify, defend, and hold harmless [English] . . . [from] any claim or
suit, including trespass . . . when BGP . . . commence[s] field operations
without the permit acquisition of 100% of the mineral owners and 100% of the
surface owners.@ (Emphasis added.)  Based on our interpretation of this
provision, it appears BGP agreed to both defend and indemnify English
in suits arising from BGP=s operations when those operations began
before 100 percent of the landowners had consented.  Giving reasonable effect to every word used
in the contract, and understanding the separate and distinct nature of the two
duties, we hold that BGP agreed to defend EnglishCseparate and apart
from its duty to indemnifyCfrom suits falling
within the terms outlined in the contract. 
See Griffin, 955 S.W.2d at 82; Tesoro Petroleum Corp.,
106; S.W.3d at 125; E & L Chipping Co., 962 S.W.2d at 274.








Turning to a review of the pleadings in
the 43 underlying lawsuits, the plaintiffs alleged that BGP, English, and their
affiliated entities Adid seismic testing without first
obtaining the permission of landowners, and beyond the boundaries (both
temporal and geographic) of the permits.@  Thus, it appears the allegations fall
sufficiently within the terms outlined in the contract.  However, BGP contends that the only cause
which arguably falls under the contract is the plaintiff=s trespass
action.  In fact, BGP is correct that the
pleadings allege causes of action other than trespass.  Specifically, the petitions complain of: (1)
trespass (either surface or subsurface); (2) negligence in failing to obtain
permission to explore; (3) negligence in failing to warn of impending
exploration; (4) negligence in failing to carefully explore; (5) negligence per
se in exploring without permission; (6) negligence per se in exploring beyond
the geographical boundaries of the permits; and (7) negligence per se in
exploring beyond the time limits of the permits.  

Although the pleadings specifically allege
Anegligence@ and Anegligence per se,@ it appears that
these theories of liability stem primarily from the fact that BGP was exploring
without the permission of all the landowners. 
In other words, remove the trespass and all other causes of action are
negated.  Moreover, A[t]he focus of the
inquiry is the facts alleged; legal theories alleged are not determinative of
the duty to defend.@ Paradigm Ins. Corp. v. Tex. Richmond
Corp., 942 S.W.2d 645, 649 (Tex. App.CHouston [14th
Dist.] 1997, writ denied).  Therefore,
simply pleading negligence is not sufficient to void BGP=s responsibility
to provide a defense from suit caused, initially, by its commencement of
operations before receiving 100 percent of the landowners= permission.








Assuming arguendo that the pleadings sufficiently
allege separate negligence causes of action, that still does not relieve BGP of
its duty to defend English in the underlying lawsuits.  When some theories of liability fail to give
rise to the duty to defend but other theories do, the party should be required
to provide a defense.  See Gen. Motors Corp., 2001 WL 1029519, at *7 (ATypically, an
insurer has a duty to defend, despite theories of liability asserted . . .
which are not covered under the policy, if there are any theories of
recovery that fall within . . . the policy.@) (emphasis in original); cf. Fid.
& Guar. Ins. Underwriters, Inc. v. McManus, 633 S.W.2d 787, 788 (Tex.
1982) (explaining that when a petition only alleges facts excluded by an
insurance policy, the insurer is not required to defend).  It is only when no facts sufficiently fall
within the agreement that the party is excused from its duty to defend.  McManus, 633 S.W.2d at 788 (citing Heyden Newport Chem. Ins. Co. v. Southern
Gen. Ins. Co., 387 S.W.2d 22, 24B25 (Tex. 1965)).  Therefore, even assuming the negligence
theories are not covered by the contract in this case, the trespass theory
undoubtedly falls within the agreement=s parameters.  Thus, at a minimum, BGP is required to defend
the 43 actions for trespass.  We see no
reason to segregate the claims and require BGP to defend the trespass actions
while separately requiring English to defend the remaining causes.  Requiring such a separation would do little
to promote judicial economy and would likely cause additional, unnecessary
expense to the 43 plaintiffs by forcing them to litigate their related claims
in separate proceedings.

Neither do we see sufficient justification
to permit BGP to escape the effects of its agreed upon contractual obligations.  If BGP had no desire or intention to provide
a defense for English in suits arising from its exploration activities, it
could have left out the word Adefend@ from the contract.  An example of a contract with an indemnity
excluding the duty to defend was at issue in Patch, 845 F.2d at 572, a
case relied on by BGP.  In Patch,
the Fifth Circuit held that it could not decide the purely Aacademic question@ of who owed
indemnity until the indemnitee=s liability was
established.  Id.  This is the exact holding BGP is seeking from
this court.  However, the critical
distinction is that, unlike the BGP-English contract, the contract in Patch
did not require the indemnitor to Adefend@ its indemnitee.
Here, however, BGP specifically agreed to defend English in suits stemming, at
least in part, from BGP=s beginning operations before all
landowners had consented.  Because the
pleadings sufficiently fall within this agreement, we hold that BGP is required
to defend the 43 underlying Hidalgo County lawsuits.

Express Negligence Doctrine








The only issue remaining for our
determination is whether the express negligence doctrine applies, as asserted
by BGP, effectively voiding any right English otherwise has to indemnification,
including the costs of defense.  BGP
specifically argues that the contract fails to satisfy the express negligence
doctrine because it does not expressly indemnify  English from its own negligence.  Furthermore, BGP contends that, because the plaintiffs
in the underlying lawsuits sued English for negligence, the express negligence
doctrine voids any obligation BGP had to indemnify or pay for costs and
attorney=s fees incurred by
English.

The express negligence doctrine requires a
party contracting for indemnity from the consequences of its own negligence to
clearly express that intent within the four corners of the contract.  Fisk Elec. Co., 888 S.W.2d at 814.  The doctrine is intended to remove the
ambiguity from indemnity provisions and ultimately reduce the need for
satellite litigation regarding interpretation of indemnity clauses.  Id. (citing Ethyl Corp. v. Daniel
Constr. Co., 725 S.W.2d 705, 708 (Tex.1987)).  Indemnity provisions that do not
unequivocally state the intent of the parties within the four corners of the
instrument are unenforceable as a matter of law.  Id.  The express negligence requirement is not an
affirmative defense, but a rule of contract interpretation which is
determinable as a matter of law.  Id.  Such a determination should not depend on
the outcome of the underlying suit, but should be established as a matter of
law from the pleadings.  Id.  Therefore, the express negligence test may
properly be applied at the summary judgment stage of a trial.  MAN GHH Logistics GMBH v. Emscor, Inc.,
858 S.W.2d 41, 43 (Tex. App.CHouston [14th
Dist.] 1993, no writ).

Applying the doctrine to this case, the
contractual provision clearly does not indemnify English from its own negligent
acts.  In fact, the only reference to
negligence in the provision requires BGP to indemnify English from Aany claim or suit
arising out of the negligent actions or omissions of BGP, its
subcontractors or employees.@  (Emphasis added.)








Further, the express negligence doctrine
does not apply to non-negligent actions. 
For example, in DDD Energy, Inc. v. Veritas DGC Land, Inc., this
court held that an indemnitee could seek indemnification for claims not based
on negligence.  60 S.W.3d 880, 885 (Tex.
App.CHouston [14th
Dist.] 2001, no pet.).  Relying on Texas
Supreme Court precedent, we reasoned that because A[s]ome of the claims
brought . . . are not negligence based claims . . . the express negligence
component of the fair notice requirements does not apply.@  Id. (citing Dresser Indus., Inc. v.
Page Petroleum Corp., 853 S.W.2d 505 (Tex. 1993)).  We recognize that, in DDD Energy,
Inc., the indemnitee was permitted to seek indemnification for the
underlying non-negligence claims but was simultaneously precluded from
indemnification for the negligence. 
However, the indemnitee appealed only the court=s decision on
indemnificationCnot whether the indemnitor was required to
step in and defend the underlying suits. 
Accordingly, we did not address the distinction between the duty to
defend and the duty to indemnify, and we did not provide an explicit ruling on
the indemnitor=s duty to step in and defend its
indemnitee.

BGP also cites Fisk Elec. Co. for
the proposition that where an indemnity agreement fails the express negligence
test, the indemnitee is precluded from recovering attorney=s fees and
expenses.  See 888 S.W.2d at
814.  We agree that failure to meet the
express negligence test precludes a party from seeking indemnification for its
own negligence.  However, we do not read Fisk
Elec. Co. to be so limiting as BGP proposes.  First, the only cause of action
asserted against the indemnitee in Fisk Elec. Co. was based exclusively
on the indemnitee=s negligence.  Here, the underlying plaintiffs asserted
non-negligence claims that are not governed by the requirements of the express
negligence doctrine.  See DDD Energy,
Inc., 60 S.W.3d at 885.  Moreover, as
already explained, even assuming some of the Hidalgo County plaintiffs= claims arise from
English=s negligence, the
additional trespass claims undoubtedly give rise to BGP=s obligation to
defend English regardless of the express negligence doctrine.  See Griffin, 955 S.W.2d at 82; Collier,
64 S.W.3d at 62; Reser, 981 S.W.2d at 263.  Thus, we disagree with BGP=s assertion that
the express negligence doctrine relieves it of its responsibility to pay for or
provide a defense to the Hidalgo County lawsuits.








Conclusion

          Because the duty to defend is a separate
and distinct obligation that may arise regardless of the duty to indemnify, and
because the pleadings in the underlying Hidalgo County lawsuits sufficiently
pled facts which obligate BGP to defend English, we find the trial court erred
in denying English=s request for declaratory judgment.  Accordingly, we reverse and render judgment
in favor of English and find that BGP has a contractual obligation to defend
English in the 43 underlying Hidalgo County actions.

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

 

Judgment
rendered and Opinion filed September 15, 2005.

Panel
consists of Justices Yates, Anderson, and Hudson.











[1]  American
States Insurance Company is the commercial general liability insurance carrier
for English Land Service and is a party to this lawsuit by virtue of its
subrogation interest.  Both American
States and English Land Service demanded that BGP provide and pay for a defense
to the underlying lawsuits.





[2]  Although
English had obtained the necessary permits from both the city of Donna and
Hidalgo County, it had not received permission from 100 percent of the
landowners, both mineral estate and surface owners, when BGP began its seismic
explorations.





[3]  English
originally requested a declaration that BGP has a duty to both defend
and indemnify English from the underlying Hidalgo County lawsuits.  However, in its appellate briefs, English
made it clear that it is not asserting any right to indemnity and conceded that
such a right is not justiciable until the underlying cases are resolved.  Instead, English is seeking only a
determination as to BGP=s duty to defend English in the underlying
suits.  Therefore, we do not decide today
the issue of BGP=s indemnity obligations.





[4]  See, e.g., Fireman=s Ins. Co. v. Burch, 442 S.W.2d 331, 332 (Tex. 1968)
(holding the question of an insurance company=s duty to defend is a justiciable
issue); Nat=l County Mut. Fire Ins. Co. v.
Johnson, 829
S.W.2d 322, 324 (Tex. App.CAustin 1992), aff=d, 879 S.W.2d 1 (Tex. 1993) (AWhether an insurer has a duty to
defend presents a justiciable question suitable for a declaratory judgment
action.@); Colony Ins. Co. v. H.R.K.,
Inc., 728 S.W.2d 848, 852 (Tex. App.CDallas 1987, no writ) (A[T]o the extent a declaratory judgment decides that the
insurer owes no duty to defend . . . a justiciable controversy was before the
trial court.@).  Moreover, courts readily distinguish the duty
to defend and the duty to indemnify and often find the duty to
defend even where there is no finding of liability or duty to indemnify.  See, e.g., Farmer=s Tex. County Mut. Ins. Co. v.
Griffin, 955
S.W.2d 81, 82 (Tex. 1997) (holding an insurer=s duty to defend and duty to
indemnify are distinct and separate duties); Collier v. Allstate County Mut.
Ins. Co., 64 S.W.3d 54, 62  (Tex.
App.CFort Worth  2001, no pet.) (AIn contrast to the duty to defend,
the duty to indemnify only arises after an insured has been adjudicated . . .
to be legally responsible for damages in a lawsuit.@); Reser v. State Farm Fire
& Cas. Co., 981 S.W.2d 260, 263 (Tex. App.CSan Antonio 1998, no pet.) (using
similar language and explaining that the duty to defend Ais unaffected by facts ascertained
before suit, developed in trial, or by the ultimate outcome of the case@); E & L Chipping Co., Inc.
v. Hanover Ins. Co., 962 S.W.2d 272, 274B75 (Tex. App.CBeaumont 1998, no pet.) (holding that the duty to defend is
broader than the duty to indemnify).





[5]  BGP also relies on several cases to
support its contention that only a post-trial recovery of attorney fees
would be appropriate.  First, BGP cites Fisk
Elec. Co., for the proposition that there is no obligation to pay attorney
fees or expenses where there is no duty to indemnify.  888 S.W.2d at 814B15. 
However, as we have previously observed, Fisk Elec. Co. is
distinguishable from the present case. 
Next, BGP refers to Patch v. Amoco Oil Co. for the proposition
that an indemnitee can recover the costs of litigation only after the
indemnitee is found Anot negligent.@ 
845 F.2d 571, 572 (5th Cir. 1988) (citing Fischer Constr. Co. v.
Riggs, 320 S.W.2d 200 (Tex. Civ. App.CHouston), rev=d on other grounds, 325 S.W.2d 126 (Tex. 1953)).  However, the contract in Patch did not
require the indemnitor to separately defend any lawsuits brought against
its indemnitee.  Id. 
Finally, BGP turns to Keystone Equity, a case originally cited by appellants, and argues that
because the court said attorney fees are necessarily included in the
contractual phrase Aindemnify, defend, and save
harmless,@ post-trial payment of these
fees is all that is required of the indemnitor to fully meet its
obligations.  730 S.W.2d at 340.  However,
this argument ignores the critical distinction between the duty to defend and
the duty to indemnity.  Moreover, nothing
in Keystone Equity requires an indemnitee to wait until after conclusion
of the underlying lawsuits in order to seek a defense from its indemnitor.





[6]  We recognize
that most of the cases addressing this issue, and many of the cases we have
cited, involve the duty to defend in the insurance context.  However, we find little reason why the
principles regarding an insurer=s duty to defend should not apply with equal force to
an indemnitor=s contractual promise to duty defend its
indemnitee.  See generally Gen. Motors
Corp. v. Am. Ecology Envtl. Svcs. Corp., No. Civ.A.399CV2625L, 2001 WL
1029519, at *6B8 (N.D. Tex. Aug. 30, 2001) (applying the same
principles regarding the duty of an insurer to defend in the insurance context
to the duty of an indemnitor who has contractually agreed to defend its
indemnitee); Fisk
Elec. Co., 888
S.W.2d at 815 (A[T]he standard for determining whether a contractual
indemnitor has a duty to defend is the same as in cases involving an insurer=s duty.@).