**Affirmed and Opinion Filed October 5, 2015**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-14-00774-CV

**ROHRMOOS VENTURE, ERIC LANGFORD, DAN BASSO AND TOBIN GROVE,**
**Appellants**
**V.**
**UTSW DVA HEALTHCARE, LLP, Appellee**

**On Appeal from the 192nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-10-15959**

## MEMORANDUM OPINION

Before Justices Francis, Lang-Miers, and Whitehill
Opinion by Justice Whitehill

Rohrmoos Venture's motion for reconsideration is denied. On the Court's own motion,

we withdraw our opinion dated August 3, 2015 and vacate the judgment of that date. This is

now the Court's opinion.

This case involves claims for breach of the implied warranty of suitability and breach of

contract arising out of a commercial lease. The jury found that both parties breached the lease,

but the landlord breached first, and that the landlord breached the implied warranty of suitability.

The trial court entered judgment for the tenant, UTSW DVA Healthcare, LLP ("UT"), against

the landlord Rohrmoos, Eric Langford, Dan Basso, and Tobin Grove (collectively "Rohrmoos").

Rohrmoos appealed.

Rohrmoos's appellate brief presents these eight issues:[1]

(1) The parties contracted for an exclusive remedy that superseded the *implied warranty of suitability*.

(2) – (3) The trial court erred in admitting certain expert testimony and documents, without which there is no evidence or insufficient evidence that Rohrmoos breached the *implied warranty of suitability.*

(4) There is no evidence or insufficient evidence to support the jury's finding that Rohrmoos breached the *implied warranty of suitability* because there must be evidence of (a) defect at the lease's inception; (b) the defect must be latent and vital; and (c) the defect must exist at the lease termination.

(5) UT waived any breach of the *implied warranty* by remaining on the property for three years after discovering the alleged breach.[2]

(6) The trial court erred in awarding UT attorney's fees because (a) the lease allegedly does not provide for attorneys' fees to UT; (b) UT cannot recover its attorneys' fees under the declaratory judgment statute because UT allegedly abandoned its declaratory judgment claim; and (c) there is no evidence supporting the fee amounts the jury found.

(7) The trial court erroneously refused to disregard the jury's answers to questions 1– 6 in the charge because those answers are either unsupported by the evidence, or they are matters of law which the court is solely responsible for determining; and

---

[1] The two lists of issues in Rohrmoos's brief are numbered differently and do not correspond to the arguments in the text. For example, the list of "issues presented for review" includes an additional issue (numbered four) that asserts the trial court erred by giving an incorrect instruction on the implied warranty of suitability. There is no separate section of the brief that argues this issue; the only reference is within the body of the seventh issue complaining about the jury's answers to the charge. Therefore, we address the complaint about the instruction in conjunction with the seventh issue. We number the issues in the order in which they appear in the Table of Contents section of the brief and address the points raised in the body that reference these numbers.

[2] Although the Table of Contents appears to state this issue more broadly, the text of Rohrmoos's brief casts this argument solely in terms of the implied warranty of suitability.

(8) The trial court should have entered judgment against UT because there is evidence that UT breached the lease and Rohrmoos's damages evidence was uncontroverted.

For the reasons discussed below, we affirm the trial court's judgment.

## I. Background

The facts are detailed, and the record is extensive. But we discuss the facts generally because we decide this case on settled legal principles that do not need a detailed factual discussion.

**Water Problems**

This case revolved around water problems in a commercial building UT leased from Rohrmoos to operate as a dialysis clinic. There were extensive efforts to determine what was causing those problems. When Rohrmoos did not solve the problem, UT moved out before the lease term expired.

**The Trial**

After moving out, UT sued Rohrmoos and Langford for breach of the implied warranty of suitability and breach of contract.[3] UT also requested a declaratory judgment that: (i) a casualty occurred in accordance with the lease, (ii) Rohrmoos failed to remedy the casualty and (iii) UT had the right to terminate the lease.

Rohrmoos answered the lawsuit and counterclaimed for negligence and breach of contract. Rohrmoos also asserted several affirmative defenses, including waiver and prior material breach.

UT asserted the following affirmative defenses in response to Rohrmoos's counterclaim: (i) contributory negligence, (ii) failure to mitigate damages, (iii) termination of the contract was

---

[3] The live pleading at trial also includes claims against Rohrmoos general partners Dan Basso and Tobin Grove.

justified due to health and safety concerns; (iv) "waiver or estoppel," and (v) statute of limitations.

Before trial, Rohrmoos moved to exclude the testimony from an engineer UT retained, Mike Stenstrom, and letters he wrote regarding the property. After two hearings, the trial court allowed some of Stenstrom's testimony and all but one section of one of his letters.

Other UT witnesses included the property engineer Boyce Farrar, the property administrator, a state inspector, the facility maintenance man, and other UT personnel involved in operating the facility. UT's witnesses testified about the water and flooring problems and the unsuccessful efforts to resolve these problems. Because the issues were not resolved, and UT was concerned about patient health and safety, it terminated the lease and moved the facility to another location.

Rohrmoos's witnesses included engineer Tom Witherspoon, a plumber, an architect, two architectural engineers, two real estate service professionals, two ceramic tile experts, two of the facility's medical directors, and others. In short, Rohrmoos elicited testimony that (i) the floor tile buckled because it was installed incorrectly and (ii) the water issues were not caused by a structural defect and did not render the facility unsuitable for a dialysis clinic.

The case was submitted to the jury after nine trial days and with over nine hundred exhibits. UT did not seek to recover damages on its breach of implied warranty or breach of contract claims. Instead, in questions 1–3, the jury was asked whether Rohrmoos failed to comply with the lease (and whether UT waived such breach), whether UT failed to comply with the lease, and if appropriate, which party failed to comply first. Question 4 asked whether Rohrmoos breached the implied warranty of suitability and whether UT waived any such breach. The charge also asked questions concerning attorney's fees for both parties that were not predicated on any affirmative liability findings.

–4–

Responding to the charge's questions, the jury found that UT and Rohrmoos both failed to comply with the lease, that Rohrmoos failed to comply first, and that Rohrmoos breached the implied warranty of suitability. The jury found attorney's fees for both UT and Rohrmoos of $800,000 for trial court representation, $150,000 for representation at the Court of Appeals, and $75,000 for representation at the Texas Supreme Court.

Based on the jury's answers, the trial court entered final judgment against Rohrmoos for the amount of attorney's fees that the jury found.

Rohrmoos subsequently moved to reform the judgment, or alternatively, for a new trial.

The trial court denied the motion, and Rohrmoos appealed.

**The Appeal**

Rohrmoos's appellate arguments largely center on the jury's finding that Rohrmoos breached the *implied warranty of suitability*. But, because we uphold the judgment on the prior material breach findings favoring UT, we need not (and do not) address in detail those issues premised on the breach of implied warranty finding.

## II. Analysis

**A.    Rohrmoos's Second through Fifth Issues:  Is the evidence sufficient to support the breach of implied warranty finding?**

Rohrmoos's issues two and three argue that without Stenstrom's and Farrar's allegedly improper testimony and the complained-of exhibits, the evidence would be insufficient to support the jury's finding that Rohrmoos breached the *implied warranty of suitability*. Likewise, Rohrmoos's fourth issue argues that the evidence is insufficient to support certain elements of the *implied warranty* claim. Similarly, Rohrmoos's fifth issue posits that UT waived its *implied warranty* claim by remaining on the property for three years after allegedly discovering the breach.

All of these arguments, however, are irrelevant unless Rohrmoos also defeats the answers to questions one through three, which support UT's prior material breach of contract defense to Rohrmoos's counterclaim. But, as discussed later, Rohrmoos does not properly challenge the sufficiency of the evidence to support the jury's breach of contract findings.[4] And unchallenged jury findings are binding on this court. *Carbona v. CH Med., Inc*., 266 S.W.3d 675, 687 (Tex. App.—Dallas 2008, no pet.). Accordingly, because the answers to questions one through three, which support UT's prior material breach defense to Rohrmoos's counterclaim, are binding on us, we reject Rohrmoos's issues two through five, which we need not and do not address in further detail. *See, e.g.*, TEX. R. APP. P. 47.1; *Zurich Fin. Ltd. v. Davis*, No. 09-09-00484-CV, 2010 WL 3910360, at \*6 (Tex. App.—Beaumont Oct. 7, 2010, pet. denied) (mem. op.) (where unchallenged liability finding supported judgment, challenged liability finding was not reversible error).

In addition, Rohrmoos has not demonstrated that the jury's affirmative findings on breach of implied warranty and waiver caused it any harm. *See* TEX. R. APP. P. 44.1; *Lorus v. Members Mut. Ins. Co*., 603 S.W.2d 818, 819–20 (Tex. 1980) (describing harmless error rule as common sense policy of not reversing judgment unless error has contributed to adverse judgment in a substantial way); *see also G&H Towing Co. v. Magee,* 347 S.W.3d 293, 297 (Tex. 2011). Rohrmoos does not explain how a jury finding that does not result in any damages or support the attorney's fees award could be constitute anything more than harmless error, if it were error at all.

---

[4] Although Rohrmoos's eighth issue summarily argues that we should reverse the judgment and render judgment in its favor for the "undisputed proof of loss," this argument claims only that the amount of Rohrmoos's damages resulting from UT's breach are undisputed and ignores the jury's findings regarding Rohrmoos's prior material breach. And although the heading for the argument challenging the jury questions on breach of contract and prior material breach says the jury's answers are "unsupported by the evidence," the ensuing text does not make that argument. Therefore, we cannot address the sufficiency of the evidence to support the breach of contract findings. *See* TEX. R. APP. P. 38.1.

For the above reasons, we resolve Rohrmoos's second, third, fourth and fifth issues against it.[5]

## B. Issue One: Did Article XIII provide UT's exclusive remedy?

In an effort to negate the jury's finding that Rohrmoos breached the implied warranty of suitability, Rohrmoos argues that article XIII of the lease, which addresses "casualty" events, provides an exclusive repair remedy that superseded the implied warranty of suitability.[6] Rohrmoos states that UT "initially sued under Article XIII," but then "opted to invoke the [implied warranty] remedy rather than the nearly-identical remedy it agreed to accept in the lease." According to Rohrmoos, "[b]ecause UT abandoned its exclusive legal remedy at trial, any judgment holding [UT] had the right to terminate the lease . . . is wrong and should be reversed." We reject Rohrmoos's first issue for several reasons.

One, although Rohrmoos correctly observes that the article XIII "casualty" theory was not tried or submitted to the jury, Rohrmoos did not object to the charge on the basis that Article XIII was UT's exclusive remedy. Nor did Rohrmoos assert that argument in its motion for new trial or otherwise identify any other portion of the record where it raised that argument. Thus, the argument was not preserved for our review. *See* TEX. R. APP. P. 38.1.

Two, without a proper objection, our review is based on the charge submitted to the jury, even if it was defective. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000).

Three, implicit in Rohrmoos's argument, had it been preserved, is the premise that there is no part of the Lease beyond Article XIII that could support a finding that Rohrmoos breached the Lease. But Article VIII of the lease, captioned "LANDLORD'S MAINTENANCE

---

[5] In addition, Rohrmoos's summary statements concerning the documents that it alleges were erroneously admitted (issue three) do not meet the requirements of the rules of appellate procedure. So even if the issue was relevant, it was waived for inadequate briefing. *See* TEX. R. APP. P. 38.1.

[6] Article XIII of the Lease, entitled "Destruction: Casualty" provides: "Damage or Destruction. In the event that during the term hereof the Premises or the Building shall be damaged or destroyed by fire, the elements, accident or other casualty (hereinafter a "Casualty"), the rights and obligations of Landlord and Tenant shall be governed by this Article XIII. Immediately or as soon as reasonably practicable thereafter, Tenant shall notify Landlord of any damage or destruction to the Premises by a Casualty."

–7–

RESPONSIBILITIES, " required Rohrmoos to maintain critical parts of the building that were at issue:

> Landlord shall maintain the roof, foundations, floor slabs, columns, exterior walls, imbedded plumbing, imbedded electrical lines (specifically keeping the roof free of leaks) gutters, downspouts and subfloors and all other structural elements of the Premises, together with the common areas of the Building including landscaping and parking areas, in good order and repair throughout the term of the Lease….

Rohrmoos does not explain why a material breach of this provision would not support a finding that Rohrmoos materially breached the Lease.

We decide Rohrmoos's first issue against it.

**C.    Rohrmoos's Seventh Issue:  Did the trial court erroneously refuse to disregard the jury's answers to questions one through six because those answers are either unsupported by the evidence, or they are matters of law which the court is solely responsible for determining?**

**1.    Introduction.**

Rohrmoos's seventh issue complains that the trial court "erred by not ignoring the answers to jury questions 1, 2, 3, 4, 5, and 6 when it entered judgment" and globally asserts, by reference to a nonexistent volume of the clerk's record, that these issues have all been preserved for our review.[7] Rohrmoos's ensuing one paragraph arguments regarding questions one through four and six essentially state that the questions were "unnecessary," "irrelevant," or "should not have been asked."

Rohrmoos's argument concerning question 5 is that the jury instruction on the implied warranty of suitability was "legally improper."

For the following reasons, we disagree with Rohrmoos's seventh issue.

---

[7] Rohrmoos cites to volume 12 of the Clerk's Record, with no page reference.  There is no volume 12 of the Clerk's Record.  But, as discussed below, Rohrmoos did object to those questions at a charge conference reflected in volume ten of the reporter's record.

## 2. Rohrmoos's Challenges to Questions One through Three.

Questions one through three addressed the following matters:

Question One: "Did Rohrmoos fail to comply with the Lease Agreement"? The accompanying instructions stated, among other things, that any such failure had to be material. The instructions also stated that "Failure to comply by Rohrmoos is excused if compliance is waived by UTSW," and further instructed as to what constitutes waiver.

Question Two: "Did UTSW fail to comply with the Lease Agreement"?

Question Three: After conditioning the question on "yes" answers to "Question 1 and 2," Question Three asked "Who failed to comply with the Lease Agreement first"?

Rohrmoos's trial objections to these questions and related instructions were:

> Question Number 1, defendants feel the issue should be presented as a separate question from breach.[8] Defendants also suggest that there should be an estoppel question, or an instruction and definition on this question of breach.

> Question Number 2, this question is improper as the Plaintiff [UT] has stipulated that they breached the contract, hence this question is unnecessary. The question will confuse the Jury. There is no evidence in opposition that would allow for the no answer to this question, or there is sufficient [sic] evidence in the record to support a no answer to the question.

> Question Number 3 is improper in this case, and should not be given at all. There is no evidence that the Plaintiff [UT] did not breach the lease. The question is not relevant and the word "first" is ambiguous or vague.

Rohrmoos's total briefing as to Questions One through Three under this issue is as follows:

> **A.** ***Jury question no.*** 1 (SuppCR7) asked whether Rohrmoos failed to comply with the Lease. However, this is not relevant to the case because UTSW abandoned any claim for damages for such breach. The trial court should thus never have given the question, or should have ignored it when entering judgment. 10RR108[.] In addition, there should have been an estoppel instruction given separately or accompanying this question, but the trial court refused to give one. 10RR108 *See Oliver v. Oliver*, 889 S.W.2d 271, 273-74 (Tex. 1994).

---

[8] Prior discussion in the record shows that Rohrmoos was referring to the waiver issue.

**B.** *Jury question* **no**. 2 (SuppCR8) asked whether UTSW failed to comply with the Lease. This question was unnecessary because UTSW stipulated it breached the Lease, and thus should not have been asked because it was not in dispute. 10RR108 *See Oliver, supra.*

**C.** *Jury question no.* 3 (SuppCR9) asked who failed to comply with the Lease "first." Regardless of whether or when Rohrmoos breached, since UTSW abandoned any claim for breach of contract, the question of Rohrmoos's breach is irrelevant and should not have been asked. 10RR108-109 See *Oliver, supra.* Further, the "first to breach" doctrine does not excuse the second party from its own breach when the second party continues to enjoy the benefits of the contract following the first breach. *See Castle Texas Prod. L.P. v. Long Trusts*, 134 S.W.3d 267, 279, 80 (Tex. App. - Tyler 2003), rev'd og, 426 S.W.3d 73 (Tex. 2014).

We reject Rohrmoos's arguments regarding Questions One through Three for these reasons:

One, Rohrmoos did not adequately brief its arguments. The Texas Rules of Appellate Procedure require that a brief "contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). The appellate court has no duty to brief issues for an appellant. *Huey v. Huey*, 200 S.W.3d 851, 854 (Tex. App.—Dallas 2006, no pet.). And the absence of appropriate record citations or a substantive analysis does not present an adequate appellate issue. *WorldPeace v. Comm'n for Lawyer Discipline*, 183 S.W.3d 451, 460 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (failure to offer argument, citations to record, or citations to authority waives issue on appeal); *Devine v. Dallas Cnty.*, 130 S.W.3d 512, 513–14 (Tex. App.—Dallas 2004, no pet.) (appellate waiver when a party fails to adequately brief a complaint, he waives the issue on appeal); *see also Fredonia State Bank v. Gen.Am. Life Ins. Co.*, 881 S.W.2d 279, 284–85 (Tex. 1994) (appellate court has discretion to deem points of error waived due to inadequate briefing). That is, an appellant must discuss the facts and the authorities relied upon as may be requisite to maintain the point at issue. *Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.*, 106 S.W.3d

–10–

118, 128 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). "This is not done by merely uttering brief conclusory statements, unsupported by legal citations." *Id.*

Here, Rohrmoos's briefing regarding these questions is too general to meet the above standards because it does not contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record. Thus this issue has not been adequately briefed and is overruled as it concerns questions one through three.

Two, to the extent that Rohrmoos intended for its appellate challenge to these questions to be that UT abandoned Article XIII as its exclusive remedy, those arguments would raise the same argument that we previously rejected in part II(B) above.

Three, Rohrmoos's motion for reconsideration improperly now argues that we should ignore the answers to Questions One through Three because the right to terminate a commercial lease for failure to make repairs exists only with respect to a breach of the implied warranty of suitability that the supreme court established in *Davidow v. Inwood North Professional Group-Phase 1*, 747 S.W.2d 373, 376-77 (Tex. 1988) and does not exist for a prior material breach of an express duty repair contained in the lease. But Rohrmoos did not assert that objection to Questions One through Three in the trial court, or otherwise preserve the point in the trial court. *See* TEX. R. CIV. P. 274 ("A party objecting to a charge must point out distinctly the matter to which he objects and the grounds of his objection.").

Specifically, Rule 274's purpose is to afford trial courts an opportunity to correct errors in the charge, by requiring objections both to clearly designate the error and to explain the grounds for complaint, an objection that does not meet both requirements is properly overruled and does not preserve error on appeal. *Castleberry v. Branscum*, 721 S.W.2d 270, 276 (Tex. 1986).

### 3. Rohrmoos's Challenge to Questions Four and Six.

Question Four, conditioned on affirmative findings for Questions Two and Three, asked to the jury to find whether Rohrmoos suffered damages proximately caused by UT's breach. Question Six asked the jury to find Rohrmoos's reasonable and necessary attorneys' fees. We reject Rohrmoos's complaints about these issues because they were not adequately briefed.

Moreover, we disagree with Rohrmoos's arguments regarding Question Four, because the jury was instructed to ignore Question Four if they found against Rohrmoos in response to Questions Two and Three, which they did. In addition, we have previously rejected Rohrmoos's challenges to the jury's answers to those questions.

We likewise reject Rohrmoos's arguments regarding Question Six because Rohrmoos was not a prevailing party in this case under any measure. Accordingly, it is not entitled to recover any of its attorneys' fees under the Lease Agreement's attorneys' fees provisions. *See* part II(F)(2) below.

### 4. Rohrmoos's Challenge to Question Five.

Because, as discussed in part A above, the answer to question five does not affect the outcome, we need not and do not address Rohrmoos's seventh issue arguments regarding that question.

## F. Rohrmoos's Sixth Issue: Did the trial court err in its attorney's fees judgment favoring UT?

### 1. Introduction.

The jury was asked to find the reasonable amount of UT's attorney's fees for representing UT in the trial court, "through appeal to the Court of Appeals," and "for oral argument and through the completion of proceedings in the Supreme Court of Texas."[9] To this

---

[9] We have not been asked to decide whether the appellate fees questions were properly phrased.

end, the jury was instructed to consider the *Arthur Andersen* factors in determining the reasonableness of the fee.[10] Based on that question and that instruction, the jury found that UT should recover $800,000 for trial court representation, $150,000 for Court of Appeals representation, and $75,000 for Texas Supreme Court representation and the trial court entered judgment in favor of UT on these findings. Rohrmoos challenges this fee award.

Rohrmoos's sixth issue posits that the trial court erred in awarding UT attorney's fees because (a) the lease allegedly does not provide for attorneys' fees to UT; (b) UT cannot recover its attorneys' fees under the declaratory judgment statute because UT allegedly abandoned its declaratory judgment claim; and (c) there is no evidence supporting the fee amounts the jury found. As discussed below, we conclude that UT was a prevailing a party within the lease's clause that permits a prevailing party in any dispute to enforce the terms of the lease and that there is legally sufficient evidence supporting the fee amounts the jury found in UT's favor. Accordingly, we need not discuss whether UT's fee award would be proper under the attorney's fees statute or the declaratory judgment act.

Attorney's fees may be recovered only if permitted by statute or contract. *See 1/2 Price Checks Cashed v. United Auto. Ins. Co*., 344 S.W.3d 378, 382 (Tex. 2011). A trial court's decision to award attorney's fees at all is reviewed under an abuse of discretion standard. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles—in other words, whether the act was arbitrary or unreasonable. *See Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

---

[10] The *Arthur Andersen* factors include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *See Arthur Andersen & Co. v. Perry Equip. Corp*., 945 S.W.2d 812, 818 (Tex. 1997). All but the eighth factor were included in the instruction here.

## 2. The Lease's Attorney's Fees Clause.

The lease provides that the "prevailing party" in an action to enforce the lease's terms is entitled to recover its reasonable attorney's fees:

> In any action to enforce the terms of this lease, the prevailing party shall be entitled to an award for its reasonable attorney's fees.

Rohrmoos does not dispute that this case involved an action to enforce the lease's terms but instead challenges whether UT was a "prevailing party. To that end, Rohrmoos cites *International Group Partnership v. KB Home Lone Star, L.P.*, 295 S.W.3d 650, 655 (Tex. 2009), for the premise that we should look to the civil practice and remedies code chapter 38 "prevailing party" concept, which requires that a party recover damages to be entitled to recover its attorney's fees in a breach of contract case. *See Green Int'l Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997). Based on that premise and the fact that UT did not recover any damages on UT's breach of contract claim, Rohrmoos argues that UT was not a prevailing party in this case because it did not recover any damages on its breach of contract claim against Rohrmoos:

> Because UTSW did not recover affirmative relief or money damages, attorneys' fees may not be awarded under the contract or under Texas Civil Practice & Remedies Code, Chapter 38.

We disagree with Rohrmoos's argument because that argument misapplies the supreme court's holding in *KB Home*.

*KB Home* was applying a contract provision similar to that in the lease, authorizing recovery of attorney's fees by the "prevailing party." As in this case, the contract did not define the term "prevailing party." *Id.* at 653.

Despite that similarity, however, we cannot conclude that *KB Home* controls the issue in this case. There, KB Home was the plaintiff and sought over $1 million in damages. *Id*. at 655. The jury, however, awarded no damages. *Id.* As a result, the supreme court held that KB

"achieved no genuine success on its claim" because it neither received anything of value nor achieved a material alteration in its legal relationship with the defendant. *Id.*

UT, by contrast, was not just the plaintiff, but also defended against Rohrmoos's breach of contract counterclaim. UT did not seek any damages. Instead, UT asked the jury to find that Rohrmoos breached the lease first, thereby relieving it of the obligation for future performance and to avoid Rohrmoos's undisputed damages on its breach of contract claim. Rohrmoos's counterclaim damages were conditioned on an affirmative finding that UT was the first to breach. But the jury found that Rohrmoos breached the lease first and was therefore not entitled to recover damages. Unlike what happened in *KB Home*, these findings and the resulting judgment favoring UT "materially altered" the legal relationship between Rohrmoos and UT.

For the above reasons, and because a prevailing party includes one who is vindicated by the court's judgment, *Johnson v. Smith*, No. 07-10-00017-CV, 2012 WL 140654, at *3 (Tex. App.—Amarillo 2012, no pet.) (mem. op.), we conclude that UT was the prevailing party and that the trial court did not err in awarding reasonable attorney's fees under the contract.[11] Having determined that UT was entitled to recover its reasonable fees, we next address whether there is legally sufficient evidence supporting the jury's findings as to those amounts.

### 3. Sufficiency of the Trial Fees Evidence.

Rohrmoos also asserts that there is no evidence or insufficient evidence to support the fee award amounts because UT's attorney's fees expert offered no evidence of the *Arthur Andersen* factors and because UT's counsel did not submit his billing records. While we review the decision to award attorney's fees under the abuse of discretion standard, the fee amount, if

---

[11] Moreover, even if the fees were not recoverable based on the contract findings, the award was also proper under the declaratory judgment act. *See* TEX. CIV. PRAC. & REM. CODE ANN. §37.009 (West 2015). There was a live declaratory judgment claim (Rohrmoos's) at the time of trial, and a fee award under this statute does not depend on a finding that a party prevailed. *See Farm Bureau Cnty. Mut. Ins. Co., v. Rogers*, 455 S.W.3d 161, 162 n. 2 (Tex. 2015).

awarded, is reviewed under the legal and factual sufficiency standard. *See Hunt v. Baldwin*, 68 S.W.3d 117, 136 n. 8 (Tex. App.—Houston [14th Dist.] 2001, no pet.).

### (a).    "Ridiculously High" Fees.

UT's lawyer, Wade Howard, testified about UT's attorney's fees. He said that he has a very broad variety of litigation practice and that is all he has done for twenty years. His standard rate is $430 an hour and he has handled cases similar to this one.

On cross-examination, Howard clarified that the $800,000 fees were necessary for his client because they were caused by the actions of opposing counsel. But he also said had this case been handled by both sides in a professional manner, the "attorney's fees should have been in the 3-$400,000 range."[12]

Rohrmoos relies on Howard's testimony that his fees were "ridiculously high" to argue that there is no evidence of UT's reasonable fees. This argument, however, ignores the testimony's context. Howard said that the fees were $800,000, and though he considered the amount "ridiculously high," the fees were necessary because the activity in the case exceeded the norm. Examples of what he considered excessive activity included the designating of numerous experts, a high volume of depositions, document production, and motion practice. Testifying that the fees in a normal case should have been lower does not mean that the actual amount was not reasonable under the circumstances.

### (b).    Billing Records.

Additionally, Rohrmoos relies on *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757 (Tex. 2012) and its progeny to argue that attorney's fees awards must be supported by some evidence of the

---

[12] When Howard's testimony concluded, Rohrmoos moved to strike the testimony from the record because Howard "did not testify about any *Andersen* factors which are necessary to be testified to, to prove reasonable and necessary attorney's fees" and "therefore his testimony is all just opinion and does not comply with the ethics rules."

actual work performed and suggests this evidence is lacking here because Howard did not submit his billing records.[13]  This reliance is misplaced.

*El Apple* was an employment discrimination and retaliation case brought under the Texas Commission on Human Rights Act.  *Id*. at 760.  In that case, the Court observed that Texas courts have used the lodestar method in awarding fees under the TCHRA because federal courts use the lodestar method in awarding fees under Title VII cases.  *Id.*[14]  Under the lodestar method, a claimant must produce evidence of who performed the legal services, when the services were performed, and the amount of time spent on various parts of the case.  *Id*. at 763.  The Texas Supreme Court, however, distinguished the lodestar method from a traditional attorney's fees award, stating, "[w]hile Texas courts have not routinely required billing records or other documentary evidence to substantiate a claim for attorney's fees, the requirement has merit in contested cases under the lodestar approach."  *Id*. at 762.

Moreover, in a subsequent opinion, the Texas Supreme Court further clarified that even under the lodestar approach, *El Apple* does not hold that time records or billing statements are the only method of proof.  *See City of Laredo v. Montano*, 414 S.W.3d 731, 735–37 (Tex. 2013).

Likewise, we also recognize that *El Apple* does not require the admission of hourly time records in all cases, nor does it hold that all attorney's fees recoveries in Texas are governed by the lodestar method.  *See Metroplex Mailing Servs. LLC v. Donnelly & Sons Co*., 410 S.W.3d 889, 900 (Tex. App.—Dallas 2013, no pet.); *see also Powell v. Penhollow, Inc.,* No. 05-13-01653-CV, 2015 WL 3454496, at *15 (Tex. App.—Dallas June 1, 2015, no pet. h.) (lodestar required only in certain cases).

---

[13] Although Rohrmoos did not object to the absence of billing records at trial, this issue was raised in the motion for new trial.

[14] Under the lodestar method, the court determines the "reasonable hours spent by counsel in the case and a reasonable hourly rate for such work." *Id*. at 760. Then, the court multiplies the number of hours by the applicable rate, yielding the lodestar. *Id*. The court then adjusts the lodestar up or down based on the *Arthur Andersen* factors. *Id.*

–17–

Many of our sister courts agree. *See Ferrant v. Grahm Assocs., Inc.*, No. 02-12-00190-CV, 2014 WL 1875825, at *7 (Tex. App.—Fort Worth May 8, 2014, no pet.) (mem. op.) (time records not required in "ordinary non-lodestar, hourly-fee breach of contract case); *Concert Health Plan, Inc. v. Houston NW Partners, Ltd.*, No. 14-12-00457-CV, 2013 WL 2382960, at *9 n.17 (Tex. App.—Houston [14th Dist.] May 30, 2013, no pet.) (mem. op.) (lodestar method not required in all cases); *Circle Ridge Prod. Inc. v. Kittrell Family Minerals, LLC*, No. 06-13-00009-CV, 2013 WL 3781367, at *7 (Tex. App.—Texarkana July 17, 2013, pet. denied) (mem. op.) (same).

Here, Rohrmoos does not assert, and the record does not show, that the lodestar method was statutorily required or that UT "chose to prove up attorney's fees using this method." *See El Apple*, 370 S.W.3d at 736; *see also Long v. Griffin*, 442 S.W.3d 253, 253 (Tex. 2014) (per curium) (referring to party "choosing" the lodestar method of proving attorney's fees).[15] The jury was not instructed to apply the lodestar method in determining a reasonable fee. We conclude that the absence of billing records does not render the evidence insufficient to support the fee award.

### (c). *Arthur Andersen* Factors.

We also reject Rohrmoos's argument that the fees are not recoverable because Howard did not specifically testify about the *Arthur Andersen* factors. It is not accurate to state that there was no testimony as to any of these factors. Courts are not required to receive evidence on each factor before awarding attorney's fees. *Sandles v. Howerton*, 163 S.W.3d 829, 838 (Tex. App.—Dallas 2005, no pet.); *Brockie v. Webb*, 244 S.W.3d 905, 909–10 (Tex. App.—Dallas 2008, pet. denied). Here, Howard testified about the factors relevant to this case. Howard's testimony

---

[15] Indeed, the only time the lodestar method was mentioned at trial was during the cross-examination of Howard when Rohrmoos's attorney asked Howard if he knew what the lodestar method was. On re-direct, Howard also explained why the fees were not necessarily tied to his hourly rate.

–18–

concerning his experience, the total amount of fees, and the reasonableness of the fees charged was sufficient to support the award. *See Woodhaven Partners, Ltd. v. Shamoun & Norman, LLP*, 422 S.W.3d 821, 846 (Tex. App.—Dallas 2014, no pet.).

### 4.    Sufficiency of the Appellate Fees Evidence

It is well-settled that, where attorney's fees are recoverable, the award may include appellate attorney's fees. *Cessna Aircraft Co. v. Aircraft Network, LLC*, 345 S.W.3d 139, 147–49 (Tex. App.—Dallas 2011, no pet.). Rohrmoos says there is no evidence to support the award of appellate attorney's fees to UT because Howard offered no testimony on this aspect of the fees award. UT responds that Rohrmoos's counsel offered generic testimony about appellate fees, and this evidence is sufficient to support the award.

Charles Bundren, Rohrmoos's counsel testified as follows:

Q. Are you familiar with the reasonable and customary fees in Dallas County for appellate work in commercial litigation cases?

A. I am.

Q. Do you have an opinion on what would be necessary fees for an appeal of this case to the Dallas County Court of Appeals?

A. If necessary?

Q. How much?

A. $150,000.

Q. Do you have an opinion on how much would be considered necessary attorney's fees for an appeal to Texas Supreme Court, if necessary?

A. $75,000.

In addition to Bundren, Rohrmoos also called Alvin Badger to testify about fees. Badger testified that "reasonable appellate fees" for an appeal of the case to the court of appeals would be $150,000 and a "reasonable fee in a case of this nature for an appeal to the Texas Supreme Court" would be $75,000.

–19–

Neither Badger nor Bundren limited their testimony to what only Rohrmoos might incur on appeal. Instead, both testified generally about reasonable fees on appeal.

Thereafter, the jury awarded both parties the exact amount of appellate fees identified by these witnesses. We thus conclude there is some evidence to support the award of appellate attorney's fees and we decide Rohrmoos's sixth issue against it.

**F.      Rohrmoos's Eighth Issue:  Did the trial court erroneously refuse to grant judgment for Rohrmoos?**

Because we conclude the trial court did not err in granting judgment for UT, do not reach Rohrmoos's remaining issue. *See* TEX. R. APP. P. 47.1.

### III.  Conclusion

Having resolved all of Rohrmoos's issues against it, we affirm the trial court's judgment.


140774F.P05

/Bill Whitehill/
BILL WHITEHILL
JUSTICE

–20–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

ROHRMOOS VENTURE, ERIC
LANGFORD, DAN BASSO AND TOBIN
GROVE, Appellants

No. 05-14-00774-CV     V.

UTSW DVA HEALTHCARE, LLP,
Appellee

On Appeal from the 192nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-10-15959.
Opinion delivered by Justice Whitehill.
Justices Francis and Lang-Miers
participating.

On the Court's own motion, we **WITHDRAW** the opinion and vacate the judgment of August 3, 2015.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee UTSW DVA HEALTHCARE, LLP recover its costs of this appeal from appellant ROHRMOOS VENTURE, ERIC LANGFORD, DAN BASSO AND TOBIN GROVE.

Judgment entered October 5, 2015.